Docket No. 98533–Agenda 8–March 2005.

In re 
MADISON H., a Minor (The People of the State of Illinois, Appellant, v. Mandi H., Appellee).

Opinion filed May 19, 2005.

JUSTICE FITZGERALD delivered the opinion of the court:

In this appeal we determine whether section 2–27(1) of the Juvenile Court Act of 1987 (the Act), which requires a trial court to provide a factual basis for its determination “in writing,” is satisfied if the court orally announces the basis for its finding and a court reporter records those statements. See 705 ILCS 405/2–27(1) (West 2002). The appellate court concluded that the plain language of section 2–27(1) requires that the basis for the court’s determination be contained in the court’s written order. 347 Ill. App. 3d 1024, 1027. On this point, we disagree with the appellate court. However, we affirm the appellate court for the reasons discussed below.

BACKGROUND

Respondent, Mandi H., and her husband, Jimmy H., are the parents of Madison H., born July 30, 2002, in Monmouth, Illinois.
(footnote: 1) Hospital staff contacted the Department of Children and Family Services (DCFS) immediately after Madison’s birth due to their concerns about the ability of respondent and Jimmy to care for the newborn. Both respondent and Jimmy are developmentally disabled. Following its receipt of a child abuse/neglect report on July 30, 2002, DCFS developed a safety protection plan. Under this plan, Mary Goodwin, respondent’s stepmother, would live with respondent and Jimmy and provide primary care to Madison. The safety plan expressly stated that Mary’s boyfriend was not permitted contact with Madison due to his prior criminal and child abuse history. On September 11, 2002, DCFS received a second child abuse/neglect report alleging that the safety plan was not being followed, and that Mary allowed her boyfriend to live in respondent and Jimmy’s home. The child abuse/neglect report also alleged that Mary failed to properly care for Madison, resulting in Madison’s hospitalization for a high fever and urinary tract infection caused by a kidney reflux condition. On September 12, 2002, DCFS took protective custody of Madison, and the State filed a petition for adjudication of wardship alleging that Madison was a dependent minor and that she lacked proper care. Madison was then placed in the temporary custody of DCFS.

At the adjudicatory hearing, on November 22, 2002, respondent and Jimmy stipulated that Madison was a dependent minor who was “lacking adequate care because of the mental disability of her mother and father.” At the hearing, the State supported the stipulation with the following factual information: both respondent and Jimmy are moderately mentally retarded; respondent and Jimmy failed to follow the safety plan developed by DCFS; Madison was in need of ongoing medical attention and monitoring for her kidney reflux condition, and the failure to adequately care for her led to her hospitalization for a fever and respiratory infection on September 7, 2002; respondent and Jimmy were unable to monitor the temperature of Madison’s formula and therefore unable to feed Madison; respondent and Jimmy were unable to monitor the temperature of Madison’s bath water and therefore unable to clean Madison; and despite numerous parenting classes both respondent and Jimmy were unable to retain information from one class to the next and therefore unable to learn proper parenting skills. The trial court found that both respondent and Jimmy had a developmental disability, and that Madison was a dependent minor based upon the stipulated facts. He ordered that respondent and Jimmy cooperate with DCFS and comply with the terms of the service plan. He further set the case for a dispositional hearing.

After several agreed continuances, on March 7, 2003, respondent appeared at the dispositional hearing with her attorney. Also present for the hearing were Jimmy, and his attorney; Jacqueline Bryant, a DCFS child welfare specialist; and Brandon Scott, respondent’s 22- year-old brother. The court considered the testimony of Jacqueline Bryant, Brandon Scott, and respondent. Bryant recommended guardianship with DCFS due to respondent and Jimmy’s inability to care for Madison’s current needs. Bryant testified that despite their best efforts to learn from family support workers who provided them with weekly one-on-one parenting instruction, their cognitive ability made it unlikely that they could ever improve their ability to provide for Madison. Scott testified that he would live with respondent and Jimmy to supervise the care of Madison. He believed that respondent was capable of caring for Madison. He testified that on one occasion he left his infant son with respondent for several hours, and her care was satisfactory. Bryant testified that DCFS recommended against placement with Scott based on his work situation and his inability to transport Madison to medical appointments on a regular basis. Last, respondent testified about her desire to care for Madison and discussed the type of care she would provide to Madison if given the opportunity. Respondent testified that she had a book that told her how to care for Madison.

The court further considered several reports, including a home study report exploring placement with Brandon Scott; several client service plans prepared by DCFS; a diagnostic report prepared by Patty Cook of the Child Abuse Council, which included psychological evaluations prepared by Dr. Elizabeth Lonning; a psychological report prepared by Dr. Joseph Cress; and a parenting-assessment report prepared by Joe Terronez, a social worker. Based upon his observations of respondent and Jimmy with Madison, Terronez concluded that respondent and Jimmy’s limited comprehension may cause Madison to be “at risk of harm if left alone with [respondent and Jimmy] without supervision.” Dr. Lonning reported that she questioned respondent’s “ability to provide a safe and nurturing environment for her child.” She stated that respondent “does not seem to have a clear understanding of cause and effect kinds of relationships and tends to give up easily when she is faced with a challenge.” Following interviews and psychological testing with respondent, Dr. Cress wrote that respondent “does not appear to be able to figure out solutions to problems but even more important she doesn’t seem to be able to identify when there is a problem and when there is not. *** Overall, the way [respondent] prioritizes her life, it is difficult to see where a child would be at the top of her list. *** I would see her as having a very difficult time being consistent, dependable, and reliable in providing for a child.” He recommended that Madison not be returned to the independent care of her parents.

At the conclusion of the hearing, the court adjudged Madison a dependent minor, made Madison a ward of the court, and placed guardianship in DCFS. The trial court’s findings are recorded in a four-page preprinted dispositional order form and in brief statements in the record. In particular, at the conclusion of the hearing, the trial judge stated on the record:

“First I find that it is [in] the child’s best interest that the child be made a ward of the Court. I find that the health, safety and in the interest of the minor, as well as the public, requires [
sic
] that the minor be placed outside the home. I find that the parents at this time are unable to care for, protect, train, properly discipline, although the child is not at an age appropriate for that at this point, but I am basing this on the ability of the parents, and that the child’s health, safety and best interest would be jeopardized if the child remained in the parents’ custody at this time. I also find that services–appropriate services that would be aimed at preservation of the family[–]would be inappropriate at this time and that it would be in the best interest of the minor that custody and guardianship be given to D.C.F.S. with right to place.

[Respondent] and Jimmy, as [the assistant State’s Attorney] stated, and I find this as well, every indication here is that you love Madison very much and I don’t doubt that at all, and I don’t doubt that you are trying your hardest to be the best parents that you can to Madison. I do have concerns about your skills at his [
sic
] point, the things that you’re learning in your parenting classes. I think it sounds like you’re cooperating, you’re doing what you need to do. I think you need to have more of that and continue to educate yourselves on being good parents. So I am going to award guardianship with the power to place and right to consent to medical and dental care to D.C.F.S. Madison will remain in foster care at this time. I’m also going to order that Jimmy and [respondent] be ordered to cooperate with the Client Service Plan and D.C.F.S.

[Respondent] and Jimmy, I need to tell you something else so this is really important so pay attention. It is important that you continue to cooperate with D.C.F.S. and any other agencies that they assign you to cooperate with. Your failure to comply with the service plan and continue to cooperate and correct the conditions which has made Madison a dependent minor could result in termination of your parental rights, and what that means is she could take your rights away as parent[s] and someone else would adopt the child. So it is important that you continue to cooperate with the agencies.”

In the preprinted dispositional order form, the court checked the box that respondent is “for reasons other than financial circumstances alone unable to care for, protect, train, educate, supervise or discipline the minor and placement with her is contrary to the health, safety and best interest of the minor because __________ .” The empty space following the “because” on the order form was left blank. The court further checked the box that “reasonable efforts and appropriate services aimed at family reunification cannot prevent or eliminate the necessity for removal of the minor from the home at this time and leaving the minor in the home is contrary to the health, welfare and safety of the minor. *** The following facts form the basis for this finding: __________.” The empty space included on the form to write the factual basis was also left blank.

Respondent appealed, arguing that the circuit court’s finding was not supported by a written factual basis as required by section 2–27(1) of the Act. The appellate court reversed and remanded for a new dispositional hearing and written order, holding that the plain language of section 2–27(1) requires that the dispositional order contain a written factual basis for its determination. 347 Ill. App. 3d at 1027. We granted the State’s petition for leave to appeal. See 177 Ill. 2d R. 315.

ANALYSIS

As an initial matter, we address the State’s contention that the issue in this appeal is waived because respondent failed to object to the trial court’s failure to make a written finding at the dispositional hearing or in her posttrial motion. The record reveals that respondent did in fact raise the instant issue for the first time on appeal. The rule of waiver, however, is a limitation on the parties and not on the courts. 
In re Marriage of Sutton
, 136 Ill. 2d 441, 446 (1990). Our concern for reaching a just result may override considerations of waiver. 
In re Timpone
, 208 Ill. 2d 371, 382 (2004). Under the circumstances in the present matter, where the well-being of a child and parental rights are at issue, we elect not to apply the rule of waiver and will consider the case on the merits.

Article II of the Act governs proceedings involving abused, neglected and dependent minors. See 705 ILCS 405/2–1 (West 2002). In this case we review the requirement found in section 2–27(1), that the court put the factual basis for its finding that a parent is unfit or unable to care for, protect, train or discipline his or her child “in writing.” 705 ILCS 405/2–27(1) (West 2002).

The State argues that the writing requirement contained in section 2–27(1) is satisfied when the trial court orally announces the factual basis for its finding and a court reporter records that statement. Respondent counters that an oral statement made on the record is not a sufficient writing under section 2–27(1). Respondent argues that only a written order containing the court’s findings satisfies the statute. Respondent maintains that a trial court’s failure to comply with this requirement is reversible error. The appellate court agreed with respondent. The appellate court held that a “trial court’s failure to provide the required written factual basis in its dispositional order [is] reversible error.” 347 Ill. App. 3d at 1028. We review the appellate court’s statutory interpretation 
de novo
. 
In re D.F.
, 208 Ill. 2d 223, 229 (2003); 
In re C.N.
, 196 Ill. 2d 181, 203 (2001).

Our primary objective in construing section 2–27(1) is to give effect to the intent of the legislature, presuming the legislature did not intend to create absurd, inconvenient or unjust results. 
D.F.
, 208 Ill. 2d at 230; 
In re D.D.
, 196 Ill. 2d 405, 418-19 (2001); 
C.N.
, 196 Ill. 2d at 215. We look first to the plain language of the statute because statutory language is the most reliable indication of the legislature’s intent. 
D.F.
, 208 Ill. 2d at 229; 
C.N.
, 196 Ill. 2d at 210. Section 2–27(1) provides, in relevant part:

“(1) If the court determines and puts in writing the factual basis supporting the determination of whether the parents, guardian, or legal custodian of a minor adjudged a ward of the court are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents, guardian or custodian, the court may at this hearing and at any later point:

* * *

(d) commit the minor to the Department of Children and Family Services for care and service ***.” 705 ILCS 405/2–27(1) (West 2002).

Section 2–27(1) instructs that the court put “in writing” the factual basis for its finding. The Act does not define “writing” or set forth what type of “writing” is required. The State argues that a literal reading of the statute would yield an absurd result and unjust consequences not contemplated by the legislature, and that an oral statement on the record is consistent with the purpose of the statute. “In giving effect to legislative intent, the court should consider, in addition to the statutory language, the reason for the law, the problems to be remedied, and the objects and purposes sought.” 
People v. Donoho
, 204 Ill. 2d 159, 171-72 (2003). Thus, in construing a statute we consider other interpretative aids, such as the reason and necessity for the statute and the purpose served by it. 
Donoho
, 204 Ill. 2d at 172;
 People v. Whitney
, 188 Ill. 2d 91 (1999).

The purpose of the Act is to secure care and guidance for minors and to serve the “safety and moral, emotional, mental, and physical welfare” of minors and the best interest of the community. 705 ILCS 405/1–2(1) (West 2002). Accord
 C.N.
, 196 Ill. 2d at 209 (the overriding purpose of the Act is to ensure that the best interests of the minor, the minor’s family, and the community are served). The Act grants circuit courts authority to make custody determinations in the best interests of the child. 705 ILCS 405/1–3(8)(c) (West 2002). Further, under the appropriate circumstances, the Act directs that the State secure permanency for minors “at the earliest opportunity.” 705 ILCS 405/1–2(1) (West 2002). See also 705 ILCS 405/1–2(2) (West 2002) (“In all proceedings under this Act the court may direct the course thereof so as promptly to ascertain the jurisdictional facts and fully to gather information bearing upon the current condition and future welfare of persons subject to this Act”); 
In re D.S.
, 198 Ill. 2d 309, 328 (2001) (“ ‘it is not in [a minor’s] best interests for his status to remain in limbo for an extended period of time,’ the circuit court should ‘consider, in an expedited manner, cases involving [such children], so that the minors whose futures are at stake in [juvenile] proceedings can obtain a prompt, just, and final resolution of their status’ ”, quoting 
In re D.L.
, 191 Ill. 2d 1, 13 (2000); 
In re Tekela
, 202 Ill. 2d 282, 296 (2002) (“from the child’s perspective, the best solution is an expeditious resolution of the appeal”). The Act is to be “liberally construed” to carry out its stated purpose and policy. 705 ILCS 405/1–2(4) (West 2002).

A dispositional hearing held pursuant to section 2–27(1) concerns the legal custody and guardianship of a minor and permits the removal of the child from a parent under the appropriate circumstances. See 705 ILCS 405/2–27(1) (West 2002). The purpose of a dispositional hearing held pursuant to section 2–27(1) is not to terminate parental rights, but rather to decide what future actions are in the best interests of the child and whether to make the child a ward of the court. See generally
 D.F.
, 208 Ill. 2d at 241; see also 
In re April C.
, 326 Ill. App. 3d 225, 237 (2001) (discussing the different standards of proof of unfitness in a proceeding seeking to remove custody pursuant to section 2–27(1) compared to a proceeding seeking the termination of parental rights held pursuant to section 2–29). Thus, where the State does not also seek to terminate parental rights, a proceeding held pursuant to section 2–27(1) is concerned only with placement of the minor. See 
April C.
, 326 Ill. App. 3d at 238.

With this in mind, we conclude that the writing requirement contained in section 2–27(1) exists to give the parties notice of the reasons forming the basis for the removal of the child and to preserve this reasoning for appellate review. Explicit oral findings stated during a dispositional hearing advise the parties of the basis for the removal of the minor and, once transcribed, provide an equal opportunity to review the validity of the findings on appeal as well as written findings contained in an order.
(footnote: 2) Respondent’s suggested interpretation of section 2–27(1) unnecessarily elevates form over substance and disrupts the adjudication of a minor for purely technical defects that do not prejudice the parties. In light of the Act’s stated purpose and policy–securing permanency for minors in a timely manner–it is unlikely that the legislature meant to include the formalistic technical requirement suggested by respondent. In some jurisdictions, where resources are scarce, respondent’s suggested interpretation has the potential to disrupt and delay the expeditious resolution of a minor’s placement. Thus, we decline to adopt respondent’s interpretation of section 2–27(1). In reaching this conclusion, we also draw upon several appellate court cases discussing separate provisions of the Act with similar writing requirements.

In 
In re Z.Z.
, the appellate court considered whether the absence of a written finding in an adjudication for neglect required reversal of the trial court’s order. 
In re Z.Z.
, 312 Ill. App. 3d 800, 803-04 (2000). In particular, the appellate court considered section 2–21 of the Act, which provides that if the court finds that a minor is neglected “the court shall then determine and put in writing the factual basis supporting that *** determination.” 705 ILCS 405/2–21 (West 2002). The appellate court observed that the trial court made explicit oral findings on the record, and concluded that the lack of a written order was a purely technical defect that did not prejudice respondent. 
Z.Z.
, 312 Ill. App. 3d at 804. The appellate court concluded that it “would be a waste of judicial resources to remand this cause solely to allow the trial court to reiterate its findings in a written order.” 
Z.Z.
, 312 Ill. App. 3d at 804.

In 
In re S.E.
, the appellate court considered whether an oral ruling was sufficient to comply with section 2–28 of the Act. 
In re S.E.
, 319 Ill. App. 3d 937, 945 (2001). Section 2–28 provides, “[i]n selecting any permanency goal, the court shall indicate in writing the reasons the goal was selected and why the preceding goals were ruled out.” 705 ILCS 405/2–28 (West 2002). The trial court’s written order contained nonspecific factual information. The trial court, however, orally explained its ruling and detailed the history of the case and the respondents’ lack of participation or attempts to complete the items listed in the service plan. In its oral statement, the trial court further referenced the respondents’ alcohol and drug abuse, homelessness, antisocial behavior, criminal behavior, and violent tendencies. Consequently, the appellate court held:

“In light of the overwhelming volume of cases *** and the bare-bones support staff at the disposal of those [juvenile] courts, a court’s oral pronouncement of its ruling should be viewed as sufficient to comply with section 2–28(2) of the Act if (1) those pronouncements appear in the record and (2) they would constitute a sufficient statement of the court’s findings if the court had turned to the court reporter and requested that its oral pronouncement be typed up and printed in the form of an order. In other words, so long as something exists in the record stating the basis for the court’s determination, the writing requirement should be deemed satisfied, regardless of whether the ‘writing’ was prepared by the court reporter or the court’s administrative staff.” 
S.E.
, 319 Ill. App. 3d at 945.

See also 
In re Kenneth F.
, 332 Ill. App. 3d 674, 684-85 (2002) (holding that the trial court’s oral ruling satisfied the writing requirement contained in section 2–28 of the Act because in its oral ruling the trial court specifically relied on DCFS and CASA reports, and these reports adequately contained the basis for the court’s decision).

Finally, in 
In re K.S.
, the appellate court deemed explicit oral findings on the record sufficient to satisfy the writing requirement of section 2–31(2) of the Act. 
In re K.S.
, 317 Ill. App. 3d 830, 833 (2000). Section 2–31(2) provides, “[w]henever the court determines, and makes written factual findings, that health, safety, and the best interests of the minor and the public no longer require the wardship of the court, the court shall order the wardship terminated and all proceedings *** finally closed and discharged.” 705 ILCS 405/2–31(2) (West 2002). The appellate court held that the trial court’s oral statements sufficiently stated the basis for the court’s finding, and remanding the matter to reiterate the findings in a written order was, therefore, unnecessary. 
K.S.
, 317 Ill. App. 3d at 833.

Likewise, we also conclude that an oral finding on the record may satisfy section 2–27(1), provided that it is explicit and advises the parties of the basis for the court’s decision. Therefore, we disagree with the appellate court’s conclusion that section 2–27(1) requires that the written dispositional order contain the factual basis for the court’s determination.

We now examine whether the trial court’s oral statement on the record in the instant matter was explicit and advised respondent of the basis for its determination. Our examination reveals that the trial court’s oral finding is neither explicit nor fact-specific to respondent. The testimony presented at the dispositional hearing on March 7, 2003, and the reports considered by the court clearly indicate that respondent’s developmental disability prompted the trial court’s finding. However, a review of the trial court’s oral statement on the record makes no mention of respondent’s developmental disability and we cannot know what facts in particular the court relied upon in making its finding. The trial court’s oral statement merely provides that it is in the “health, safety and in the interest of the minor,” that the parents are “unable to care for, protect, train, properly discipline,” and that the “child’s health, safety and best interest would be jeopardized if the child remained in the parents’ custody.” These statements mirror the statutory language–no meaningful specific factual basis is evident. The trial court only stated that it has “concerns” about respondent’s “skills,” and unlike the trial court in 
In re S.E.
, here the trial court did not further elaborate upon its concerns. Like the preprinted dispositional order described previously, the statements on the record lack the “because” and “facts forming the basis” for the trial court’s finding. Thus, we conclude that the oral statement on the record is generic and fails to give the respondent fair notice of the reasons for its decision and, therefore, does not satisfy section 2–27(1).
Cf
. 
In re M.Z.
 294 Ill. App. 3d 581, 600 (1998) (declining to address the merits and remanding the matter to the trial court to state the factual basis for its findings, holding that the trial court’s inadequate writing and brief statement on the record did not indicate the factual basis for the trial court’s finding of neglect or abuse pursuant to section 2–21(1) of the Act). Accordingly, we affirm the appellate court’s remand to the trial court for the limited purpose of allowing the trial court to enter more specific findings, consistent with the requirements of section 2–27(l).

Finally, we note respondent’s contention that there was insufficient evidence to support the trial court’s finding that custody and guardianship be given to DCFS. The State argues that respondent did not raise this issue on appeal, and directs our attention to the appellate court opinion: “In this appeal, respondent does not contest the sufficiency of the evidence to support the trial court’s dispositional order. She argues only that the cause must be remanded *** because the court failed to comply with [the statute’s writing requirement].” 347 Ill. App. 3d at 1026. Despite respondent’s current creative efforts to recraft the issue statement contained in her appellate court brief as a sufficiency-of-the-evidence argument, it is abundantly clear that she did not argue the sufficiency of the evidence on appeal. Respondent’s appeal was limited to the statutory writing requirement contained in section 2–27(1). Thus, by not objecting during the proceedings or raising the issue in a posttrial motion, or even on appeal to the appellate court, the respondent has forfeited this issue for purposes of our review. See 
People v. Enoch
, 122 Ill. 2d 176, 186 (1988).

CONCLUSION

For the reasons we have discussed, we hold that an oral statement by the trial court on the record may satisfy the writing requirement contained in section 2–27(1) of the Juvenile Court Act, if the oral statement is explicit and advises the parties of the reasons for the trial court’s decision. Here, the trial judge’s statements do not reveal the factual basis for his finding. We affirm the judgment of the appellate court.

Affirmed.

JUSTICE KILBRIDE, specially concurring:

I write separately to emphasize this court’s admonition that trial courts should either make written findings of fact or, at a minimum, transcribe and file their oral findings. As this court admonishes: “[w]hen a court makes an oral pronouncement of its findings on the record which is not otherwise reduced to writing, we strongly encourage trial courts, as a matter of practice, to order the statements transcribed and maintain a transcribed copy in the court file.” Slip op. at 8 n.2. I steadfastly believe this practice should be applied in every case of this nature.

As this court notes elsewhere, “the writing requirement contained in section 2–27(1) exists to give the parties notice of the reasons forming the basis for the removal of the child and to preserve this reasoning for appellate review.” Slip op. at 8. I agree and, further, maintain that, 
even in the absence of an appeal
, the reasons forming the basis for the removal of the child must be reduced to writing to provide the parties, social services, and the court with clear bench marks for measuring future progress toward the goal of reunification.

I firmly adhere to the belief that our trial judges proceed in good faith, with the working assumption that parents need to make progress in reuniting the family. Therefore, although the majority has not adopted an unassailable standard requiring, in all instances, a written order or a written transcript of the findings underlying removal, I reassert this court’s admonition in the strongest terms with the hope that all trial judges will provide clear written findings or written transcripts of those findings filed of record. By committing the court’s findings to writing, the purpose of section 2–27(1) is fulfilled by giving parents and social service providers full, adequate, and practical notice of the target areas where improvement is needed. A clear statement of those areas is a critical component in working toward the goal of successful family reunification. Accordingly, I respectfully submit this separate opinion to clarify my support of the majority opinion.

FOOTNOTES
1:     
1
Jimmy H. is not a party in the instant appeal.

2:     
2
When a court makes an oral pronouncement of its findings on the record which is not otherwise reduced to writing, we strongly encourage trial courts, as a matter of practice, to order the statements transcribed and maintain a transcribed copy in the court file.