THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES A. HENDERSON, Defendant-Appellant.

Fourth District   No. 4—04—0896

Opinion filed November 9, 2005.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellant.

William A. Yoder, State's Attorney, of Bloomington (Kathy Shepard, Norbert J. Goetten, and Robert J. Biderman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

Following an August 2004 stipulated bench trial, the trial court found defendant, Charles A. Henderson, guilty of failure to register as a sex offender (730 ILCS 150/3(a) (West 2002)). The court later sentenced him to 30 months' probation, subject to various conditions.

Defendant appeals, arguing that the trial court erred by excluding evidence that he was not given 10 days to register following his release from confinement, as required by statute. We agree and reverse.

## I. BACKGROUND

Initially, we note that although both parties refer to defendant as having been released on "parole," he had in fact been released on mandatory supervised release. As part of Public Act 80—1099 (Pub. Act 80—1099, eff. February 1, 1978 (1977 Ill. Laws 3264)), which included sweeping changes to the Unified Code of Corrections, the

concept of parole was eliminated and mandatory supervised release (MSR) was created. See 730 ILCS 5/3—3—1 (West 2002) (setting forth the guidelines regarding the establishment and appointment of the Prisoner Review Board); see also 730 ILCS 5/3—3—3(c) (West 2002) (providing that individuals sentenced after the effective date shall be released under MSR after serving their determinate sentence minus their accrued credit for good behavior); *People v. Whitfield*, 217 Ill. 2d 177, 188 (2005) (noting that "parole" is now called "mandatory supervised release"). Nonetheless, because both defendant and the State use the term "parole" in their appellate briefs, we will use that term as well.

The following facts are gleaned from the record and not disputed. On May 13, 2003, defendant, who previously had been convicted of (attempt) predatory criminal sexual assault and multiple counts of child pornography, was released on MSR from the Taylorville Correctional Facility. An Illinois Department of Corrections (DOC) employee met with defendant that day and notified him in writing of his obligation to register as a sex offender within 10 days of his release. DOC also issued defendant written instructions to proceed directly to his Bloomington residence and immediately check in by telephone with the "parole control center." DOC also directed defendant that after making contact, he was to remain in his residence until his parole agent made an initial visit. The DOC reporting instructions concluded as follows: "If you do not comply with this reporting requirement, you will be considered to be in violation of your release agreement and a warrant may be issued for your arrest."

As instructed, defendant remained in his residence until 6 p.m. on May 15, 2003, when his parole officer visited him. Following this visit, defendant was free to leave his residence. On May 24, 2003, Bloomington police officer Brian Brown arrested defendant for failing to register as a sex offender within 10 days of his "discharge, parole[,] or release" from DOC, in violation of section 3(a) of the Sex Offender Registration Act (730 ILCS 150/3(a) (West 2002)).

In June 2003, defendant moved to dismiss the charge, arguing, in part, that he had not been given 10 days following his release from confinement in which to comply with the statute. In August 2003, following a hearing, the trial court denied defendant's motion.

In August 2004, the State moved *in limine* to exclude evidence of the DOC order requiring defendant to remain in his residence until visited by his parole officer. The State argued that (1) the Act does not provide for an extension of the 10-day time period in which to register based on the reporting instructions given defendant by DOC, and (2) defendant thus had to register within 10 days of walking out of the

Taylorville facility on May 13, 2003. Following a hearing that same day, the court granted the State's motion, upon determining that nothing in the statute provided for an extension of the time period for registration based on a DOC order. Defendant then waived his right to a jury, and the case proceeded to a stipulated bench trial. The court found defendant guilty of failure to register as a sex offender and later sentenced him as stated.

This appeal followed.

## II. THE TRIAL COURT'S EXCLUSION OF EVIDENCE OF THE DOC ORDER

Defendant argues that the trial court erred by excluding evidence of the DOC order instructing him to remain in his residence until visited by his parole officer or risk being arrested. Specifically, he contends that under the Act, he was "confined" until his parole officer's visit ended. Thus, because the statutory clock began to run when he was free to leave his residence following his parole officer's visit on the evening of May 15, 2003, his May 24, 2003, arrest was premature. We agree.

The Act requires an individual who has been convicted of a crime defining him as a sex offender or sexual predator to register with the chief of police in the municipality in which he resides. 730 ILCS 150/3(a) (West 2002). Section 3(c)(4) of the Act discusses the inability of an individual to register as a result of being in state custody, as follows: "Any person unable to comply with the registration requirements of this [a]rticle because he or she is confined, institutionalized, or imprisoned *** shall register in person within 10 days of discharge, parole[,] or release." 730 ILCS 150/3(c)(4) (West 2002).

Our primary objective when construing the language of a statute is to give effect to the intent of the legislature, presuming that it did not intend to produce absurd or unjust results. *In re Madison H.*, 215 Ill. 2d 364, 372, 830 N.E.2d 498, 503-04 (2005). If we can ascertain intent from the plain meaning of the statute itself, that intent must prevail. *People v. Blair*, 215 Ill. 2d 427, 442-43, 831 N.E.2d 604, 614 (2005).

The central question is whether defendant was "confined" in his residence until he was "released" following the visit by his parole officer. "Confine" is defined in the dictionary as "to hold within a location." Merriam-Webster's Collegiate Dictionary 241 (10th ed. 2000). "Confinement" is defined as "the state of being imprisoned or restrained." Black's Law Dictionary 294 (7th ed. 1999). "Release" is defined as "the fact of being freed from restraint or confinement." Black's Law Dictionary 1292 (7th ed. 1999).

Giving those words their plain and ordinary meaning, we conclude that defendant was "confined" in his residence under threat of arrest from the time he arrived there on May 13, 2003, until his "release" on May 15, 2003, following the visit from his parole officer. Thus, during that two-day period, defendant was "unable to comply with the registration requirements" of section 3(c)(4) of the Act (730 ILCS 150/3(c)(4) (West 2002)). In other words, the clock did not begin to run for the purpose of the Act until the evening of May 15, 2003, when defendant was first free to leave his residence. His arrest nine days later was thus premature. Accordingly, because the DOC order instructing defendant to remain in his residence until visited by his parole officer or risk being arrested was clearly relevant to the charge against him, the trial court abused its discretion by excluding that evidence. See *People v. Cookson*, 215 Ill. 2d 194, 204, 830 N.E.2d 484, 490 (2005) (the trial court's decision whether to admit evidence is reviewed under an abuse-of-discretion standard). Had the DOC order been admitted, the State could not have met its burden of proving beyond a reasonable doubt that defendant committed the offense of failing to register as a sex offender. Thus, we reverse defendant's conviction.

In so concluding, we note that the legislature intended for individuals subject to the Act to have 10 days of *freedom* in which to fulfill their obligation to register. Our interpretation not only comports with common sense, but also avoids the potentially absurd result of a defendant's home confinement lasting more than 10 days and thus effectively denying him any opportunity to register under the Act.

As a final matter, we note that as a matter of policy, the interests of law enforcement were not served in this case, where defendant was subjected to conflicting orders. When DOC instructs a released inmate to remain in his residence until cleared to leave by his parole officer, the released inmate should be able to obey that order to the letter without fear that some other government agents will jail him for doing so.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment.

Reversed.

TURNER and APPLETON, JJ., concur.