NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200394-U

NO. 4-20-0394

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 11, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Z.T., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Sangamon County |
|       Petitioner-Appellee, | ) | No. 20JA105 |
|       v. | ) | |
| Elizabeth T., | ) | Honorable |
|       Respondent-Appellant). | ) | Karen S. Tharp, |
| | ) | Judge Presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court.
Justices Turner and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's dispositional order was not improper for failing to contain a written factual basis, and the court's order was not against the manifest weight of the evidence.

¶ 2    Respondent, Elizabeth T., appeals the trial court's dispositional order finding her unfit, unable, or unwilling for other than financial circumstances alone to care for her minor child; making the minor a ward of the court; and placing the minor in the custody and guardianship of the Illinois Department of Children and Family Services (DCFS). She argues that (1) the court improperly failed to include a factual basis for its findings in its written dispositional order and (2) the court's order was against the manifest weight of the evidence. We affirm.

¶ 3                       I. BACKGROUND

¶ 4    Respondent and Jason T. are the parents of Z.T., born March 9, 2012. On April 29,

2020, the State filed a petition for adjudication of wardship, alleging Z.T. was neglected in that she was not receiving the proper care and supervision necessary for her well-being because her parents failed to make a proper care plan for her; left her unsupervised; and "locked [her] out of their home, *** failed to allow her to return, and *** failed to make an alternative care plan for [her]." The State also alleged Z.T. was neglected in that her environment was injurious to her welfare due to her parents' drug use.

¶ 5        On July 23, 2020, respondent and Jason both entered admissions to the State's allegation that Z.T. was a neglected minor based on their failure to make a proper care plan for her. The remaining allegations in the State's petition were dismissed, and the matter was set for a dispositional hearing. The same day, the trial court entered an adjudicatory order finding Z.T. was a neglected minor.

¶ 6        On August 7, 2020, a dispositional report prepared by DCFS caseworker Melanie Verry was filed. The report showed respondent and Jason were married and that both had children other than Z.T. who were not in their care. Respondent had two older children for whom she had "signed guardianship over to her parents," and Jason had a son who resided with Jason's father. The report also showed that Z.T. was taken into protective custody on April 28, 2020, following an incident in which she was locked out of her home while respondent and Jason argued and both parents admitted to using drugs earlier in the day. After being removed from her parents' care, Z.T. was placed with her maternal grandparents and two half siblings.

¶ 7        The dispositional report further showed that respondent was unemployed and in the process of applying for disability benefits. She stated the family home was in foreclosure and, before Z.T. was taken into care, the family intended to move to Florida. Respondent also

acknowledged "that she had a prior history with substance abuse." However, she maintained it was "in the past" and that the April 28, 2020, incident "was her first relapse." Respondent reported using drugs the day of the incident "to feel closer to her husband." According to the report, respondent "continue[d] to minimize" the April 2020 incident.

¶ 8    After Z.T. was removed from her parents' care, respondent was asked to enroll in parenting classes, complete random "drug drops," continue with substance abuse counseling, continue participating in a methadone clinic, and continue seeing her counselor and psychiatrist. Respondent was reportedly cooperative with DCFS caseworkers, engaged in her required services, and attended supervised visitations with Z.T. The report shows she completed several "drug drops" from May 1 to July 29, 2020. On May 1, she tested positive for methadone and cocaine. On May 18 and June 8, she tested positive for only methadone. On June 26, she missed a drop, stating "she didn't realize what day it was," and on July 1, she again tested positive for only methadone.

¶ 9    With respect to Jason, the dispositional report also showed a history of substance abuse issues. According to the report, Jason appeared in court in February 2020 in connection with an arrest for possession of methamphetamine and possession of drug paraphernalia. With respect to that arrest, the report stated as follows:

> "Police were called due to concerns that a male was slumped over in a van. Police found Jason asleep but were able to wake him. Officers saw a syringe in the backseat. Jason was described by the officers as being erratic and he appeared to be under the influence of drugs. Upon searching the vehicle and Jason[,] officers found: several syringes, a glass pipe that had residue on one end and was burnt on the other (described as being recognized by the police as a pipe commonly used to

smoke methamphetamine), suspected crystal meth in Jason's wallet (2 grams) and suspected crystal meth in the console of the car (1 gram).

¶ 10 The report additionally stated that Jason was cooperative with DCFS and engaged in recommended services, including parenting classes, participation in a methadone clinic, and counseling. He further submitted to random "drug drops." Jason tested positive for methadone and cocaine as the result of drug drops on April 29, May 1, and May 26, 2020. He tested positive for only methadone on May 18, June 8, and July 1, 2020. He also missed a drop on June 26, 2020, stating he "didn't realize what day it was." The report further showed that Jason attended supervised visits with Z.T. but, like respondent, he "continue[d] to minimize what occurred the day that [Z.T.] was [taken] into care." Jason reportedly also failed to "take ownership" of how his actions impacted his ability to care for Z.T.

¶ 11 The dispositional report contained the following "Assessment and Summary" from Verry:

> "The parents have been fully cooperative with the DCFS caseworker. However, the mental health and substance abuse history do continue to be a concern for [Z.T.] being returned home to her parent's [*sic*] care at this time. The parents have not acknowledged how their actions and choices have negatively impacted their daughter. The [integrated assessment] screener stated in his report that at this time a return home is guarded, due to the mental health and substance abuse concerns in the household."

Verry recommended the trial court grant custody and guardianship of Z.T. to DCFS.

¶ 12 On August 13, 2020, the trial court conducted the dispositional hearing. In lieu of

a transcript of that proceeding, the record contains a bystander's report, describing what occurred at the hearing. According to the bystander's report, the State requested that (1) Z.T. be made a ward of the court and placed in the custody and guardianship of DCFS, (2) respondent and Jason cooperate with services, and (3) Z.T. remain with her maternal grandparents. Respondent objected to the State's request, asked that Z.T. be returned to her care, and "asserted" as follows:

> "[Respondent] has completed Parenting classes, has been cooperating with [DCFS], has stable housing, has been engaging with the Methadone Clinic and Substance Abuse Counseling through Family Guidance Center for six years and only relapsed once the day the child was taken into protective custody. [Respondent] also asserted that she has been visiting with the child and the visits are going well."

Jason also objected to custody and guardianship of Z.T. being placed with DCFS and asserted "that he too has been cooperating with [DCFS] and has had a period of sobriety."

¶ 13 The bystander's report further reflects that the guardian *ad litem* (GAL) agreed with the State's position and wanted "to see a completion of services before she would support a request to return [Z.T.] home." Finally, the report sets forth the trial court's decision as follows:

> "The Court made the child a ward of the Court and placed her in the custody and guardianship of DCFS. The Court did not give the right to place the children with [respondent] to DCFS, citing [section 2-23 of the Juvenile Court Act (Act) (705 ILCS 405/2-23 (West 2018))]. The Court noted that the DCFS investigation began on April 28, 2020. Jason *** tested positive for cocaine and methadone on 4-29-20, 5-2-20, and 5-26-20. [Respondent] tested positive for cocaine and methadone

- 5 -

on 5-1-20. The parents would need to continue to engage in services and show a longer period of sobriety and stability before the child could be returned home."

¶ 14   Also on August 13, 2020, the trial court entered its written dispositional order, finding it was in Z.T.'s best interest to be made a ward of the court; that respondent and Jason were unfit, unable, or unwilling for some reason other than financial circumstances alone to care for, protect, train, educate, supervise or discipline Z.T.; and that Z.T.'s best interests would be jeopardized if she remained in the custody of her parents. In a section of the order designated for the "facts" that "form[ed] the basis" for the court's findings was the following handwritten statement of the court: "[P]arents must complete and show progress and stability as to substance abuse treatment, counseling, [and] psychiatric services. See dispositional report." Finally, the court's written order shows it adjudicated Z.T. a ward of the court and ordered her placed in the custody and guardianship of DCFS.

¶ 15   This appeal by respondent followed. Although Jason was a party to the underlying proceedings, he is not a party to this appeal.

¶ 16                                    II. ANALYSIS

¶ 17   As stated, on appeal, respondent challenges the trial court's dispositional order. She contends both that the court's order improperly lacked a written factual basis for its finding that she was unfit and that it was against the manifest weight of the evidence.

¶ 18   Under the Act, the trial court employs "a two-step process to decide whether a minor should become a ward of the court." *In re A.P.*, 2012 IL 113875, ¶ 18, 981 N.E.2d 336. The first step requires the court to conduct an adjudicatory hearing on the petition for adjudication of wardship and to determine whether the minor is abused, neglected, or dependent as alleged by the

State. *Id.* ¶ 19 (citing 705 ILCS 405/2-18(1) (West 2010)). Upon finding that the minor is abused, neglected, or dependent, the court moves to step two, where it conducts a dispositional hearing to determine "whether it is consistent with the health, safety and best interests of the minor and the public that the minor be made a ward of the court." *Id.* ¶ 21 (citing 705 ILCS 405/2-21(2) (West 2010)).

¶ 19 When a minor is made a ward of the court, the trial court must also "determine the proper disposition best serving the health, safety[,] and interests of the minor and the public." 705 ILCS 405/2-22(1) (West 2018). Under section 2-27(1) of the Act (*id.* § 2-27(1)), a proper disposition may include removal of the minor from the custody of his or her parents where the court determines "the parents *** are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents[.]" The factual basis supporting the court's determination under section 2-27(1) must be "in writing." *Id.* Additionally, because section 2-27(1) lists terms in the disjunctive, "a minor can be taken away from a natural parent if that parent is adjudged to be *either* unfit *or* unable *or* unwilling." (Emphases in original.) *In Interest of Lakita B.*, 297 Ill. App. 3d 985, 992, 697 N.E.2d 830, 835 (1998).

¶ 20 On review, we will reverse the trial court's dispositional decision "only if the findings of fact are against the manifest weight of the evidence or the court committed an abuse of discretion by selecting an inappropriate dispositional order." *In re J.W.*, 386 Ill. App. 3d 847, 856, 898 N.E.2d 803, 811 (2008). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *In re Arthur H.*, 212 Ill. 2d 441, 464, 819 N.E.2d 734, 747

(2004)

¶ 21　　　　Here, respondent first asserts that the trial court erred by failing to include a factual basis for its finding that she was unfit, unwilling, or unable to care for Z.T. in its written dispositional order. We disagree.

¶ 22　　　　"The writing requirement contained in section 2-27(1) exists to give the parties notice of the reasons forming the basis for the removal of the child and to preserve this reasoning for appellate review." *In re Madison H.*, 215 Ill. 2d 364, 374, 830 N.E.2d 498, 505 (2005). In this case, the trial court's written dispositional order clearly reflects its determination that respondent and Jason were unfit, unable, or unwilling to care for Z.T. The court's order also contains a handwritten statement of the "facts" that "form[ed] the basis" for its decision, which stated as follows: "[P]arents must complete and show progress and stability as to substance abuse treatment, counseling, [and] psychiatric services. See dispositional report." Respondent fails to present any reasoned argument as to why this handwritten statement, which was clearly identified in the court's written order as the basis for its findings of fact, was insufficient to demonstrate the court's reasoning for its decision to remove Z.T. from her custody.

¶ 23　　　　Additionally, as argued by the State, a trial court's oral findings, stated during the dispositional hearing and later transcribed, have also been found to be sufficient to satisfy the "in writing" requirement of section 2-27(1). See *id.* at 374-75 ("Explicit oral findings stated during a dispositional hearing advise the parties of the basis for the removal of the minor and, once transcribed, provide an equal opportunity to review the validity of the findings on appeal as well as written findings contained in an order."). Here, although the record does not contain a transcript of the dispositional hearing, the court's oral findings were reduced to writing in the bystander's

report that was prepared in lieu of a transcript. That report shows that at the dispositional hearing, the court commented about the incident that precipitated the neglect finding, commented on evidence of substance abuse by respondent and Jason, and stated both parents "would need to continue to engage in services and show a longer period of sobriety and stability before the child could return home." Ultimately, both the court's written order and its oral statements clearly reflect a finding of parental unfitness based on substance abuse issues and an insufficiently demonstrated period of sobriety and stability. Accordingly, we find respondent's challenge to the trial court's dispositional order based on the lack of a written factual basis is without merit.

¶ 24 Respondent next argues the trial court's dispositional order was against the manifest weight of the evidence. She contends that rather than removing Z.T. from her custody, "the more appropriate and factually-supported" disposition was to place Z.T. in her custody and formulate an after-care plan to ensure Z.T.'s safety. To support that contention, respondent asserts she was neither unable, unfit, or unwilling to care for Z.T.; that her substance abuse problems were in the past and not ongoing; and that she was fully engaged in all her recommended services.

¶ 25 We disagree that the court's dispositional order was against the manifest weight of the evidence. The dispositional report reflects eight-year-old Z.T. was taken into care after an incident on April 28, 2020, when she was locked out of her home while her parents argued and on a day that both parents admitted to using drugs. Respondent subsequently had a positive "drug drop" and, according to the report, "continue[d] to minimize what occurred" on the day of the incident. Thus, although the record shows respondent was cooperative with DCFS and engaging in services, the evidence belies her assertion that her substance abuse issues were solely in the past and not ongoing.

¶ 26　　　　Additionally, the evidence also demonstrated that Jason had continuing substance abuse issues. He had pending drug-related charges in the months before the April 2020 incident and positive "drug drops" thereafter. Like respondent, Jason also minimized the April 2020 incident and reportedly did "not take ownership of how his actions" impacted his ability to care for Z.T. Because respondent and Jason are married and maintained a relationship, Jason's circumstances are relevant to the issues involving respondent even though he is not a party on appeal. Further, as noted by the State, respondent reported using drugs on April 28, 2020, to "feel closer" to Jason, reflecting the impact his drug use could have upon her own unresolved substance abuse issues.

¶ 27　　　　As stated, the trial court determined respondent needed "to continue to engage in services and show a longer period of sobriety and stability before [Z.T.] could return home." Given the demonstrated substance abuse issues of both parents and the brief period that elapsed since the incident that precipitated the neglect finding, an opposite conclusion from the one reached by the trial is not clearly evident. Thus, respondent's challenge to the court's dispositional order lacks merit.

¶ 28　　　　　　　　　　　　　　　III. CONCLUSION

¶ 29　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 30　　　　Affirmed.