**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210531-U

Order filed April 19, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* J.W., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| a Minor | ) | Peoria County, Illinois. |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-21-0531 |
| | ) | Circuit No. 18-JA-397 |
| v. | ) | |
| | ) | |
| Tonecia C. C., | ) | Honorable |
| | ) | Timothy Cusack, |
| Respondent-Appellant). | ) | Judge, presiding. |

JUSTICE DAUGHERITY delivered the judgment of the court.
Justices Holdridge and Schmidt concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court's determination that it was in the best interest of the minor to terminate respondent's parental rights was not against the manifest weight of the evidence.

¶ 2     The respondent, Tonecia C. C., appeals from the circuit court's order terminating her parental rights to her son, J.W., arguing the trial court's finding that it was in the best interest of J.W. to terminate her parental rights was erroneous. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4            In October 2018, J.W. was born. On November 7, 2018, the State filed a petition for adjudication of wardship, alleging that J.W. was neglected in that his environment was injurious to his welfare based on the following: (a) respondent was previously found unfit in Peoria County Case Nos. 16-JA-41 and 16-JA-42 on July 26, 2016, and in Peoria County Case No. 16-JA-339, on February 28, 2017, with no subsequent finding of fitness; (b) respondent had not completed services that would result in a finding of fitness; (c) respondent had a criminal history which included: 2009 Possession/ Consumption of Alcohol by a Minor, 2016 Possession of Controlled Substance, 2016 Possession of Stolen Firearm, 2016 Retail Theft, and 2016 Possession of Drug Paraphernalia; and (d) Michael W. (J.W.'s putative father) had a criminal history which included: 2013 Residential Burglary, 2008 Burglary, 2006 Possession of a Controlled Substance, 2003 Possession of Controlled Substance, 2002 Manufacture/Delivery of a Controlled Substance, 2001 Possession of a Controlled Substance, 1998 Manufacture/Delivery of Controlled Substance, 1995 Manufacture/Delivery of Controlled Substance, 1993 Illegal Possession a Weapon/ Firearm, 1992 Possession of a Controlled Substance, 1990 Manufacture/ Delivery a Controlled Substance, and 1991 Felony Possession of a Weapon/Firearm.

¶ 5            On November 7, 2018, a temporary shelter care hearing took place, at which respondent was not present. The trial court found probable cause to believe that the allegations in the petition were true and that it was a matter of immediate and urgent necessity and in the best interest of J.W. that J.W. be placed in shelter care. The trial court ordered that J.W. be placed in the temporary custody of the Department of Children and Family Services (DCFS) with DCFS having the right to place J.W. The trial court noted that a shelter care rehearing was waived due to respondent's placement in the Department of Corrections.

                                          2

¶ 6 On December 10, 2018, respondent, through her attorney, filed a response to the juvenile petition, admitting the allegations in the petition. On January 29, 2019, following an adjudication hearing, the trial court found a factual basis for the respondent's admissions and adjudicated J.W. neglected, finding the contents of petition had been proven by a preponderance of the evidence. By agreement of the parties, a dispositional hearing took place immediately thereafter, with the trial court finding respondent to be unfit and unable to care for, protect, train, or discipline J.W. due to respondent's prior unfitness and her current incarceration. J.W. was made a ward of the court, and DCFS was named J.W.'s guardian with the right of placement. Respondent was ordered to cooperate with DCFS, comply with the terms of her service plan, and correct the conditions which required J.W. to be in care, or risk the termination of her parental rights.

¶ 7 Respondent's service plan included the following: (1) execute all authorizations for releases of information requested by DCFS; (2) cooperate fully and completely with DCFS; (3) obtain a drug and alcohol assessment arranged by DCFS and follow, cooperate with, and successfully complete any recommended course of treatment, and provide proof to DCFS of successful completion of the treatment; (4) perform random drug drops four times per month; (5) submit to a psychological examination arranged by DCFS and follow the recommendations made; (6) participate in and successfully complete counseling and provide DCFS proof of successful completion of counseling; (7) participate in and successfully complete a parenting course or parenting classes specified by DCFS and provide DCFS proof of successful completion of such parenting course or classes; (8) participate in and successfully complete a domestic violence course or classes specified by DCFS and provide DCFS or designee proof of successful completion of such domestic violence course or classes; (9) obtain and maintain stable housing that was conducive to the safe and healthy rearing of J.W.; (10) provide the assigned caseworker

3

with any change in address and/or phone number, and any change in members of the household within three days; (11) provide to the assigned caseworker the name, date of birth, and social security number, and relationship of any individual requested by DCFS with whom DCFS has reason to believe a relationship exists or has developed that will affect J.W.; (12) attend scheduled supervised visits with J.W. at the times and places set by DCFS and demonstrate appropriate parenting conduct during those visits; and (13) use best efforts to obtain and maintain a legal source of income.

¶ 8        On November 23, 2020, the State filed a petition to terminate respondent's parental rights and the parental rights of Michael W. or any unknown putative father of J.W. The petition alleged that: (1) respondent was an unfit person pursuant to section 50/1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2020)), in that she failed to make reasonable progress toward the return of J.W. during any nine-month period following the adjudication of neglect, with the nine-month period being January 29, 2019, to October 29, 2019; (2) respondent was an unfit parent in light of her convictions in Logan County in case no. 19-CF-88 for Aggravated Battery of a Peace Officer (Class 2 felony) and in Peoria County in case no. 16-CF-629 for Possession of a Stolen Firearm (Class 2 felony), case no. 16-CF-182 for Possession of a Controlled Substance (Class 4 felony), and case no. 16-CM-1197 for Possession of Drug Paraphernalia (Class A Misdemeanor), in that she was depraved as defined by section 50/1(D)(i) of the Adoption Act (750 ILCS 50/1(D)(i) (West 2020) ("[t]here is a rebuttable presumption that a parent is depraved if the parent has been criminally convicted of at least 3 felonies under the laws of this State *** and at least one of these convictions took place within 5 years of the filing of the petition or motion seeking termination of parental rights"); (3) Michael W., putative father of J.W., was an unfit person pursuant to section 50/1(D)(b) of the Adoption Act (750 ILCS

4

50/1(D)(b) (West 2020)), in that he failed to maintain a reasonable degree of interest, concern or responsibility as to J.W.'s welfare; and (4) father unknown, putative father of J.W., was an unfit person pursuant to section 50/1(D)(b) of the Adoption Act in that he failed to maintain a reasonable degree of interest, concern or responsibility as to J.W.'s welfare.

¶ 9        On July 21, 2021, a fitness hearing took place. The trial court confirmed with respondent that she had written a letter to her attorney indicating that she did not want to be a part of the hearing and that she consented to the hearing taking place without her. She confirmed that she wanted to be excused from the rest of the hearing. Respondent's attorney confirmed that he had received a letter from respondent in which she instructed him to have the trial court proceed with terminating her parental rights because she was imprisoned and could not complete services. He stated, "[s]he won't be released on time and on that basis—and did not return our response to the petition to terminate in a timely fashion." The trial court admonished respondent that the hearing would proceed without her and confirmed that she understood the hearing was for the termination of her parental rights. The trial court stated, "[s]o we'll go through with this hearing without you being present." The trial court then advised respondent of her appeal rights.

¶ 10        Thereafter, the attorney for the State provided a proffer of evidence, indicating that the caseworker would testify consistently with her best interest report filed on July 9, 2021, that respondent had been incarcerated and, even though services were made available to respondent during her incarceration, she failed to avail herself of those services to make progress toward fitness. The attorney for the State also indicated that the named putative father, Michael W., had not been in involved in the pendency of the case. The trial court found the State met its burden of proving unfitness by clear and convincing evidence. By agreement of the parties, the best interest hearing commenced immediately thereafter.

5

¶ 11    At the best interest hearing, the caseworker, Heather Gillespie, testified that J.W.'s current placement with a licensed foster family met all the statutory best interest factors and the family was willing to provide permanence for J.W. She more specifically testified that in his current placement, J.W. was safe, secure, provided for, happy, and healthy. She also testified that the foster family had recently adopted J.W.'s older sibling. The caseworker recommended that the permanency goal be changed to adoption. The guardian *ad litem* agreed with the caseworker's recommendation. The trial court stated, "I'll adopt the recommendations as outlined." The trial court found that it was in the best interest of J.W. that the parental rights of the respondent and the putative father (Michael W. and fathers unknown) be terminated.

¶ 12    Respondent appealed.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, respondent contends the trial court erred in finding it was in J.W.'s best interest to terminate her parental rights. Respondent's argument in this regard is that J.W. should have been given an opportunity to reunite with her in light of the Juvenile Court Act's policy of maintaining family ties wherever possible. Respondent also argues the trial court did not have enough information to find that it was in J.W.'s best interest to terminate her parental rights. She argues that although she had waived her continuing appearance at the final hearing, she still should have been given a chance at reunification. In response, the State argues that respondent has offered no analysis related to the applicable statutory best interest factors and, thus, any argument as to the trial court's weighing of those factors should be considered forfeited in accordance with Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). Additionally, the State argues that a review of the statutory best interest factors, as applied in this case, indicate it was in J.W.'s best interest to terminate respondent's parental rights.

6

¶ 15    At the best interest stage, the focus of the termination proceeding shifts to the child, and the parent's interest in maintaining the parent-child relationship must yield to the child's interest in having a stable and loving home life. *In re D.T.*, 212 Ill. 2d 347, 364 (2004). At the best interest hearing, the State bears the burden of proving by a preponderance of the evidence that the termination of parental rights is in the child's best interest. *In re K.P.*, 2020 IL App (3d) 190709, ¶ 41. The preponderance standard is a less stringent standard of proof than the standard of beyond a reasonable doubt or the standard of by clear and convincing evidence. *Id.* (citing *People v. Peterson*, 2017 IL 120331, ¶ 37). To meet the preponderance of the evidence standard, the State need only present enough evidence to render the fact at issue more likely than not. *Id.*

¶ 16    In making a best interest determination, the trial court shall consider, within the context of the child's age and developmental needs, the following: (1) the physical safety and welfare of the child; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including where the child feels love, attachment, and a sense of being valued, the child's sense of security and familiarity, continuity of affection for the child, and the least disruptive placement alternative for the child; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures, siblings, and other figures; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child. 705 ILCS 405/1-3(4.05) (West 2020).

¶ 17    A trial court's best interest determination will not be reversed unless it is against the manifest weight of the evidence. *K.P.*, 2020 IL App (3d) 190709, ¶ 43; *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072 (2006) (when the admission or denial of evidence is at issue on appeal, the

trial court's judgment is reviewed for an abuse of discretion; however, when the sufficiency of the evidence presented at the termination hearing is challenged on appeal, the appropriate method of review is the manifest weight standard). "A best interest determination is against the manifest weight of the evidence where it is clearly apparent from the record that the trial court should have reached the opposite conclusion or that the conclusion itself is unreasonable, arbitrary, or not based on the evidence presented." *K.P.*, 2020 IL App (3d) 190709, ¶ 43.

¶ 18 Here, we agree with the State's contention that respondent has provided no analysis in her brief on appeal in regard to the above-referenced best interest factors. See Ill. S. Ct. R. 341(h)(7) (appellant's brief shall include an argument, which shall contain the contentions of the appellant and the reasons therefor; points not argued are forfeited). We also note that despite the State's argument in its response brief, respondent did not file a reply brief to address the best interest factors. Nonetheless, the rule of forfeiture is a limitation on the parties, not on the courts, and our concern in providing a just result can override considerations of forfeiture. *In re Madison H.*, 215 Ill. 2d 364, 371 (2005). We, therefore, address respondent's contention that the State did not meet its burden of proving that it was in J.W.'s best interest to terminate her parental rights. See *id.* ("[u]nder the circumstances in the present matter, where the well-being of a child and parental rights are at issue, we elect not to apply the rule of [forfeiture] and will consider the case on the merits").

¶ 19 Initially, we noted there was no indication in the record that the best interest report was submitted into evidence or that the trial court took judicial notice of, or considered, the best interest report. Nonetheless, there was evidence, by way of Gillespie's testimony, that the applicable best interest factors supported the trial court's determination that it was in J.W.'s best interest to terminate respondent's parental rights. The best interest factors favoring J.W.'s current

placement included J.W.'s safety and welfare, the development of his identity, J.W.'s background and ties, his sense of attachment, and the foster family's preferences. In his current placement, J.W. was happy, healthy, safe, secure, and provided for, and his older sibling had been adopted by the same foster family. We particularly note that J.W.'s need for permanence favored termination. Two-and-one-half-year-old J.W. had been in foster care since November of 2018, essentially the entirety of his life, during which time respondent was incarcerated. Moreover, there was no indication that J.W. had any sense of attachment to, or bond with, respondent. In reviewing the statutory factors within the context of J.W.'s age and developmental needs, we cannot say that the trial court's finding that it was in J.W.'s best interest to terminate respondent's parental rights was against the manifest weight of the evidence. See *K.P.*, 2020 IL App (3d) 190709, ¶¶ 41, 43. We, therefore, affirm.

¶ 20                                  III. CONCLUSION

¶ 21           The judgment of the circuit court of Peoria County is affirmed.

¶ 22           Affirmed.