Docket Nos. 103620, 103639 cons.

**IN THE**
**SUPREME COURT**
**OF**
**THE STATE OF ILLINOIS**

*In re* LEONA W., a Minor, Appellant (The People of the State of Illinois, Appellant, v. Oscar H., Appellee).

*Opinion filed April 3, 2008.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Kilbride, Garman, and Burke concurred in the judgment and opinion.

**OPINION**

This appeal arises from a judgment of the circuit court of Cook County that found Oscar H. to be unfit and terminated his parental rights to Leona W. (L.W.), his biological daughter. The appellate court reversed and remanded with directions. *In re L.W.*, 362 Ill. App. 3d 1106 (2005). We denied leave to appeal, but in the exercise of our supervisory authority, we directed the appellate court to vacate its judgment and reconsider the cause in light of our decision in *In re Arthur H.*, 212 Ill. 2d 441 (2004). *In re L.W.*, 218 Ill. 2d 540 (2006) (supervisory order). Following remand, the appellate court reached the same conclusion it had initially and once again reversed and remanded to the circuit court. 367 Ill. App. 3d 844. The State and the office of the Cook County public guardian, representing the interests of L.W., then petitioned our court for leave to appeal. 210 Ill. 2d R. 315. We allowed those petitions and consolidated them. For the reasons that follow, we reverse the appellate court's judgment and remand the cause to that court for further proceedings.

L.W., the biological daughter of Oscar H., was born in October of 1996 to Sandra W., a drug addict. At the time of her birth, L.W. tested positive for intrauterine cocaine exposure and syphilis. She was subsequently found to be suffering from mental deficits, a seizure disorder and asthma.

Within weeks of her birth, L.W. was taken into protective custody by the Department of Children and Family Services (DCFS). Although this was originally intended to be a temporary measure, L.W. has never lived with either of her biological parents. She is now 11 years old.

In early November 1996, less than three weeks after L.W.'s birth, DCFS filed a petition under section 2–13 of the Juvenile Court Act of 1987 (705 ILCS 405/2–13 (West 1996)) asking that the child be made a ward of the court. That request was predicated on DCFS's allegation that L.W. was neglected within the meaning of section 2–3(1)(b) of the Juvenile Court Act (705 ILCS 405/2–3(1)(b) (West 1996)) because her environment was injurious to her welfare. More specifically, the petition alleged that the whereabouts of L.W.'s mother were currently unknown, that the mother had admitted to cocaine use three weeks before L.W. was born, and that the mother had failed to utilize support services which had been offered to her.

As an additional basis for requesting that L.W. be made a ward of the court, the petition also alleged that the child was abused within the meaning of section 2–3(2)(ii) of the Juvenile Court Act (705 ILCS 405/2–3(2)(ii) (West 1996)). The grounds for that allegation were that the mother or other person responsible for the child's welfare presented a substantial risk of physical injury to her because (1) the mother had a documented history of inadequate supervision of the child's siblings and (2) one of those siblings had been sexually molested and sustained a fractured arm due to physical abuse.

When DCFS initially filed its petition for adjudication of wardship, the identity of L.W.'s father was unknown. Oscar H. subsequently came forward and admitted paternity. In January of 1997, the circuit court entered an order memorializing Oscar H.'s admission. By separate order the court appointed the public defender to represent him. The petition for adjudication of wardship was then amended to name Oscar H. as L.W.'s biological father.

A hearing on the petition for adjudication of wardship was convened February 25, 1997. In connection with that hearing, the parties stipulated that Sandra W. and Oscar H. are L.W's biological parents; that L.W. was born on Oct. 21, 1996; that at the time of L.W.'s birth, Oscar H. was "noncustodial"; and that if called as a witness, Judith Kilpatrick, a social worker with Cook County Hospital, would testify that Sandra W. had admitted using cocaine three weeks prior to L.W.'s birth and wished to give up the child. The parties further stipulated that Pam Rowlands, a caseworker with Catholic Charities, would testify that at the time L.W. was born, Sandra W. had eight other children, all of whom were in DCFS custody, and that Sandra W. had not completed any drug rehabilitation services.

The circuit court reviewed the parties' stipulations, which were read into the record at the February 25, 1997, hearing. At the conclusion of that hearing, the circuit court entered an order which found, based on the stipulated facts, that L.W. was abused within the meaning of the Juvenile Court Act because she was at substantial risk of physical injury as set forth in section 2–3(2)(ii) of the Act (705 ILCS 405/2–3(2)(ii) (West 1996)). The matter was then set for a dispositional hearing.

By consent of all the parties and with approval of the court, the normal 30-day deadline for the dispositional hearing was waived. See 705 ILCS 405/2–21(3) (West 1996). The dispositional hearing was ultimately conducted on April 29, 1997. At the conclusion of that hearing, the court entered a dispositional order in accordance with section 2–23 of the Juvenile Court Act (705 ILCS 405/2–23 (West 1996)). That order made L.W. a ward of the court; found both parents "unable for some reason other than financial circumstances alone to care for, protect, train or discipline the minor"; held that reasonable efforts had been made to prevent or eliminate the need to remove the minor from the home, but that appropriate services aimed at family preservation and family unification had been unsuccessful; determined that it was in the best interests of L.W. to remove her from her parents' custody and care; and placed L.W. in the custody of the DCFS Guardianship Administrator with the right to place the minor. See 705 ILCS 405/2–27 (West 1996).

As authorized by section 2–23(2) of the Juvenile Court Act (705 ILCS 405/2–23(2) (West 1996)), the court also entered an order of protection pursuant to section 2–25 of the Act (705 ILCS 405/2–25 (West 1996)). The order prohibited any unsupervised contact between L.W. and Sandra W., but allowed Oscar H. to have unsupervised day visits with the child subject to various conditions. Finally, the court scheduled a progress report and permanency hearing for June 9, 1997.

Numerous proceedings ensued. On May 13, 1997, Oscar H. moved to vacate the prior placement orders and to have custody of L.W. be given to him. This was styled "emergency motion to return home" and was submitted on Oscar H.'s behalf by the public defender. A hearing on that motion was held June 9, 1997, the same date set for the permanency hearing and progress report. The result of that hearing was entry of an agreed order which set as a permanency goal L.W.'s "return home," meaning her return to Oscar H.'s home.

Shortly thereafter, on June 19, 1997, a second agreed permanency order was entered. The new permanency order set as a goal L.W.'s return home to Oscar H. within 12 months. Both Sandra W. and Oscar H. were present in court when this was done and both were represented by counsel.

Section 2–28 of the Juvenile Court Act (705 ILCS 405/2–28(2) (West 1996)) provides that permanency hearings are to be conducted every 12 months following the initial permanency hearing, more frequently if necessary, until the permanency plan and goal have been achieved. In accordance with that requirement, four additional permanency hearings were conducted by the circuit court between 1998 and 2001. Throughout these proceedings, the goal remained returning L.W. to Oscar H.

Another permanency hearing was held in February of 2002. Following that hearing, a hearing officer recommended a new goal: substitute care pending a determination by the court as to whether the biological parents' parental rights should be terminated and a guardian appointed with authority to consent to L.W.'s adoption. Oscar H., through his attorney, objected to this recommendation, arguing that the other children he had fathered with Sandra W. reside with him, he had proven his ability to care for those children and for L.W., and it would be in L.W.'s best interests for her to come live

with him as well. In Oscar H.'s view, the appropriate permanency goal should have been return of L.W. to him within 5 months.

The circuit court rejected Oscar H.'s arguments and entered a permanency order setting as a goal the placement of L.W. with a private guardian. The intended guardian was a nonrelative foster parent with whom L.W. had been living since shortly after her birth. The reasons stated in the order for selecting this goal and rejecting previous goals were that L.W., who was then five, had lived with the foster parent nearly her entire life; L.W.'s mother was not working toward reunification; L.W.'s father, Oscar H., had not made reasonable progress toward reunification; and the foster parent would allow continued contact with L.W.'s biological family. The planned date for achievement of the goal was the following October.

In the months which followed, the public guardian sought and was granted approval to allow L.W. to move out of state with her foster parent. At the end of the year, the court entered a new permanency order setting as a goal substitute care pending a determination as to whether the biological parents' parental rights should be terminated. The reasons given for this goal were that L.W., then six, had lived in "a non-relation, specialized home" since 1996; she had special needs; and her parents had "participated in services but *** not made substantial progress toward reunification." The deadline for achieving this goal was March of 2003.

When March 2003 arrived, the State filed a petition under section 2–29 of the Juvenile Court Act (705 ILCS 405/2–29 (West 1996)) seeking appointment of a guardian with authorization to consent to L.W.'s adoption under the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 1996)). The petition alleged that in February of 1997, L.W. was found by the court to have been abused, and that both of L.W.'s parents were unfit because they had failed to maintain a reasonable degree of interest, concern or responsibility for the child's welfare (see 750 ILCS 50/1(D)(b) (West 1996)) and had not made reasonable efforts to correct the conditions that were the basis for the removal of the child from them or made reasonable progress toward return of the child to them (see 750 ILCS 50/1(D)(m) (West 1996)). The petition further alleged that L.W.'s mother was also unfit for the additional reasons that she had failed to protect L.W. from conditions in the child's environment injurious to her welfare (see 750 ILCS

50/1(D)(g) (West 1996)) and that she was an habitual drunk or a drug addict (see 750 ILCS 50/1(D)(k) (West 1996)). Finally, the petition asserted that it would be in the child's best interests if a guardian were appointed with the right to consent to her adoption.

A hearing on the State's petition was convened on August 15, 2003. At the outset of that hearing, the public guardian filed a motion *in limine* to exclude evidence regarding Oscar H.'s custody and parenting of the other children he had fathered with Sandra W., L.W.'s mother. Oscar H. opposed the motion, asserting that such evidence was relevant to the issue of his parental fitness in this case. The court then decided to continue the hearing for four days, until August 19, 2003. In anticipation of the new hearing, the State advised the court that it was dropping its claims that the mother was unfit under subsections (g) and (k) of section 1(D) of the Adoption Act (750 ILCS 50/1(D)(g), (D)(k) (West 1996)).

When the hearing resumed on August 19, the court granted the public guardian's *in limine* motion, holding that it would exclude evidence regarding Oscar H.'s fitness as a parent with respect to his other children. The court then proceeded to hear evidence on whether Oscar H. and Sandra W. were unfit under subsections (b) or (m) of section 1(D) of the Adoption Act (750 ILCS 50/1(D)(b), (D)(m) (West 1996)), and, if unfit, whether it was in the best interests of L.W. that a guardian be appointed with the power to consent to her adoption.

To support its claim of unfitness, the State called as a witness Mary Henderson, a case supervisor for Catholic Charities who had been working on L.W.'s case since 1997. Henderson reviewed in detail the history of the case, the details of L.W.'s condition, education, and developmental progress; the parents' circumstances; their relationship with L.W.; the steps they had taken to correct the conditions which were the basis for removal of the child from them; and the progress they had made toward the return of the child to them. Based on Henderson's testimony and the documentary evidence in the record, the court found that there was clear and convincing evidence to support the allegation that Oscar H. and Sandra W. were unfit under subsection (m) of section 1(D) of the Adoption Act (750 ILCS 50/1(D)(m) (West 1996)) because they had failed to make reasonable efforts to correct the conditions that were the basis for the removal of

L.W. from them and had not made reasonable progress toward her return to them.

After making this finding, the court immediately proceeded to consideration of the child's best interests. On that question the court heard testimony from the woman who had been serving as L.W.'s foster mother. The foster mother described L.W.'s condition; the conditions in the foster home; L.W.'s relationship with the foster mother's adopted son; L.W.'s involvement with the neighborhood, school and community; and the foster mother's desire to ultimately adopt L.W.

The court also heard testimony from Gina Barrios, a social worker from Catholic Charities currently assigned to L.W.'s case. Barrios testified about her familiarity with L.W.'s case and detailed L.W.'s current living conditions and relationship with her foster family. Barrios reported that a neighbor boy was alleged to have touched L.W. inappropriately, an incident reported to authorities by L.W.'s foster mother. Barrios also spoke of L.W.'s medical and developmental needs and how they were being addressed by the foster mother. Barrios thought the foster mother should be permitted to adopt L.W.

Based upon the foregoing evidence and after hearing closing arguments, the circuit court concluded that it was in L.W.'s best interests to terminate the parental rights of both Oscar H. and Sandra W. and to appoint a guardian with the right to consent to L.W.'s adoption. The court entered its termination order on August 20, 2003. In that order, the court granted both parents the right to appeal. Termination of parental rights is immediately appealable under Rule 307(a)(6) (188 Ill. 2d R. 307(a)(6)), and Sandra W. and Oscar H. each filed separate notices of appeal within the time and in the manner required by that rule.

Sandra W.'s appeal was ultimately found to be without merit, and the appellate court affirmed the circuit court's judgment terminating her parental rights. That decision has not been challenged. This appeal concerns only the challenge to the circuit court's judgment asserted by Oscar H.

As grounds for his appeal, Oscar H. raised two issues in the appellate court: (1) whether the trial court erred when it granted the

motion *in limine* to exclude evidence regarding his custody of the four other children he had fathered with Sandra W.; and (2) whether the trial court's finding of parental unfitness was against the manifest weight of the evidence in light of the fact that Oscar H. was found fit to care for the other four children, some of whom suffer from the same or similar medical problems as L.W. The public guardian cross-appealed, arguing that the circuit court had erred in rejecting his claim that Sandra W. and Oscar H. were unfit for the additional reason that they had failed to maintain a reasonable degree of interest, concern or responsibility for the child's welfare within the meaning of section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 1996)).

The appellate court reversed and remanded. It held that the circuit court's judgment terminating Oscar H.'s parental rights could not stand because compliance with section 2–21 of the Juvenile Court Act (705 ILCS 405/2–21 (West 1996)) was a precondition to a termination hearing and, in its view, the circuit court's February 25, 1997, determination that L.W. was abused did not meet the requirements of that statute. *L.W.*, 362 Ill. App. 3d at 1115-16.

Whether the circuit court's decision comported with section 2–21 was not questioned by any of the parties to the case. It was raised by the appellate court *sua sponte.* In the appellate court's view, the circuit court's determination failed to comply with section 2–21 for two reasons. First, while Sandra W.'s culpability for the circumstances leading to the court's finding of abuse were apparent, the circuit court had failed to identify any facts which would support a determination that Oscar H., himself, was in any way responsible for those circumstances. Second, the appellate court thought the written order entered by the circuit court was technically deficient because it did not comport with section 2–21's requirement that a court's determination of abuse "shall be stated in writing with the factual basis supporting that determination" (705 ILCS 405/2–21(1) (West 1996)). *L.W.*, 362 Ill. App. 3d at 1115-16.

After reaching this conclusion, the appellate court went on to address whether evidence of Oscar H.'s success in gaining custody of four of L.W.'s siblings should have been admitted. After rejecting an argument by the public guardian that considerations of waiver should bar consideration of the issue, the appellate court opined "that evidence that Oscar H. has been found fit and given custody of four

of L.W.'s siblings is material and relevant and is one factor that should be considered by a court making a determination on the issue of Oscar H.'s parental fitness and ability to parent and care for L.W., the child who is the subject of these proceedings." *L.W.*, 362 Ill. App. 3d at 1120. Accordingly, the appellate court held that should the State elect to begin these proceedings anew in the circuit court, the circuit court should not bar Oscar H. from presenting this evidence. The court did not reach any of the other issues in the case.[1]

The State petitioned our court for leave to appeal. It contended that the appellate court's decision conflicted with this court's opinion in *In re Arthur H.*, 212 Ill. 2d 441 (2004), because it was premised on the erroneous view that salient inquiry at the adjudicatory hearing was whether parents were at fault. According to the State, the critical inquiry under *Arthur H.* is simply whether the child has been abused or neglected, not who is responsible. The State next argued that the appellate court's decision conflicted with this court's opinion in *In re Madison H.*, 215 Ill. 2d 364 (2005), and various appellate court opinions because it failed to consider whether transcribed oral findings or other sources in the record were sufficient to allow the reviewing court to overlook the trial court's failure to make the written findings required by section 2–21(1) of the Juvenile Court Act (705 ILCS 405/2–21(1) (West 1996)). The State also contended that the appellate court's decision misinterpreted section 2–21(2) of the Juvenile Court Act (705 ILCS 405/2–21(2) (West 1996)) by concluding that without the written findings required by section 2–21(1), a hearing on termination of parental rights cannot occur. Finally, the State asserted that by addressing the propriety of the motion *in limine* and considering what evidence would be admissible at a possible future hearing, the appellate court exceeded the proper boundaries of judicial review and issued an improper advisory opinion.

---

[1]The court's opinion alluded to a constitutional challenge Oscar H. had raised, but it provided no details regarding that challenge. It merely stated that if the issue should arise in the trial court on remand, the trial court should consider it in light of our opinion in *In re D.W.*, 214 Ill. 2d 289 (2005). See *L.W.*, 362 Ill. App. 3d at 1120.

A petition for leave to appeal was also filed by the public guardian. As had the State, the public guardian asserted that the appellate court was wrong to overturn the judgment terminating Oscar H.'s parental rights based on the failure of the circuit court's February 1997 determination to specify what acts of Oscar H. caused the child to be abused. It agreed with the State's contention that the appellate court's ruling conflicted with this court's decision in *In re Arthur H.*, 212 Ill. 2d 441 (2004), but it also challenged the appellate court's decision on the additional grounds that the time for appealing the initial determination of abuse or neglect had passed and the appellate court lacked jurisdiction to revisit that determination. Even if the court's determination were subject to reexamination, the public guardian contended, any deficiencies in the written findings entered by the court were not necessarily fatal. The public guardian argued that under this court's decision in *In re Madison H.*, 215 Ill. 2d 364 (2005), deficiencies in the court's written order could be overcome by transcribed oral findings or other sources in the record, and that when the appellate court ruled as it did here, it did so without reviewing the transcript of the February 1997 hearing on the petition for adjudication of wardship.[2] Because the appellate court did not have the full basis for the circuit court's adjudicatory ruling before it, the public guardian asserted, that court did not know and could not have known whether there was, in fact, a sufficient basis for the circuit court's ruling notwithstanding the absence of the written findings required by statute.

The public guardian next took issue with the appellate court's judgment on the grounds that it appeared to have been predicated on the mistaken belief that L.W. had actually been physically abused prior to the February 1997 hearing, when she had not been. Finally, the public guardian asserted that the appellate court's resolution of the

---

[2]The transcript of the February 25, 1997, hearing was not included in the original record on appeal. Until the appellate court *sua sponte* made the finding of abuse or neglect an issue on appeal, the parties did not know and could not have foreseen that the transcript would be relevant to a review of the judgment terminating Oscar H.'s parental rights. After the appellate court's ruling made the transcript relevant, the record was supplemented to include it.

motion *in limine* question conflicted with its prior holding in *In re M.C.*, 201 Ill. App. 3d 792, 798 (1990), that a parent's ability to care for another child is not relevant to the question of whether he is fit to care for the child presently before the court.

This court denied both the State's petition for leave to appeal and the petition for leave to appeal filed by the public guardian. At the same time, however, we entered supervisory orders directing the appellate to vacate its judgment and to reconsider the cause in light of our opinion in *In re Arthur H.*, 212 Ill. 2d 441 (2004). In accordance with our supervisory orders, entered at the end of March 2006, the appellate court filed orders vacating its judgment and indicating that it would reconsider the case. The State and the public guardian were granted leave to file supplemental briefs, and a reply brief was filed by Oscar H.

Several months later, in September of 2006, the appellate court filed a new opinion in the case. The new version was largely unchanged from the prior version. The opinion revised the court's discussion of the requirements of section 2–21 of the Juvenile Court Act (705 ILCS 405/2–21 (West 1996)) to include a reference to our opinion in *In re Arthur H.*, 212 Ill. 2d 441 (2004), but the overall analysis remained unchanged. The court concluded that the circuit court's determination of abuse or neglect was not supported by the requisite written findings and did not provide Oscar H. with notice of the reasons supporting the determination of abuse or neglect. Because the finding of abuse or neglect was deficient, the court opined that the matter should not have proceeded to a hearing on the petition for termination of parental rights. The court therefore reversed and remanded to the circuit court for further proceedings. 367 Ill. App. 3d at 854-55. In so doing, the court held, as it had originally, that evidence that Oscar H. had been found fit and given custody of L.W.'s siblings was material and relevant and should not have been excluded. Correspondingly, the court continued to adhere to the position that the evidence could be considered by the circuit court in assessing Oscar H.'s fitness to parent L.W. should the State elect to proceed with termination proceedings following remand. 367 Ill. App. 3d at 858-59.

There being no significant change in the appellate court's judgment, the public guardian once again petitioned our court for

leave to appeal based on the arguments it asserted in its original petition for leave to appeal. The State did likewise. We granted both petitions and consolidated them for briefing, argument and decision.

Before turning to the merits of these consolidated appeals, there is one preliminary matter we must address. Oscar H. contends that because our court denied the prior petitions for leave to appeal filed by the State and the public guardian, principles of *res judicata* should bar those entities from raising any of the same arguments now that the matter is before us again. This argument is without merit. For *res judicata* to apply, there must have been a final judgment on the merits of the case. Denials of petitions for leave to appeal are not decisions on the merits. *People v. Ortiz*, 196 Ill. 2d 236, 257 (2001). They cannot be interpreted as reflecting approval or disapproval of a lower court's action. They signify only that four members of the court, for reasons satisfactory to them, have not voted to grant leave to appeal. See *People v. Vance*, 76 Ill. 2d 171, 183 (1979). The merits of the arguments asserted by the State and public guardian are therefore properly before us.

We turn then to the question of whether the appellate court erred in setting aside the circuit court's judgment terminating Oscar H.'s parental rights to L.W. based on what it perceived as defects in the circuit court's order of February 25, 1997, finding L.W. to be abused. The answer to this question is yes. The appellate court did so err. Had Oscar H. wished to challenge the validity of the February 1997 order, he had two opportunities to do so. First, he could have filed a petition for leave to appeal from that order pursuant to Supreme Court Rule 306(a)(5) (155 Ill. 2d R. 306(a)(5)), governing appeals from interlocutory orders affecting the care and custody of unemancipated minors, if the appeal of such orders is not otherwise specifically provided for elsewhere in these rules.[3] Second, he could have

---

[3]There is another rule pertaining to adjudications of wardship. Supreme Court Rule 662(a) provides that "[a]n appeal may be taken to the Appellate Court from an adjudication of wardship in the event that an order of disposition has not been entered within 90 days of the adjudication of wardship." 134 Ill. 2d R. 662(a). In this case, however, there was no such delay. The dispositional order was entered within 90 days of the adjudication of wardship. The rulings were, in fact, entered simultaneously.

challenged the finding of abuse by taking an appeal from the April 29, 1997, order adjudging L.W. a ward of the court, finding both parents "unable for some reason other than financial circumstances alone to care for, protect, train or discipline the minor," and determining that it was in L.W.'s best interests to remove her from her parents' custody and care and placing her in DCFS custody. Dispositional orders of this kind are regarded as final and appealable as of right. See *In re Faith B.*, 216 Ill. 2d 1, 3 (2005). Appealing a dispositional order is the proper vehicle for challenging a finding of abuse or neglect. See *In re Arthur H.*, 212 Ill. 2d 441 (2004) (where a permissive interlocutory appeal has not been sought or allowed).

Appeals from final judgments entered in proceedings under the Juvenile Court Act, other than delinquent minor proceedings, are governed by the rules applicable to civil cases. 134 Ill. 2d R. 660(b). The rule pertaining to appeals from final judgments is Supreme Court Rule 301 (155 Ill. 2d R. 301). Where an appeal is appropriate under Rule 301, notice of appeal must be filed within 30 after entry of the final judgment from which the appeal is being taken or 30 days after entry of the order disposing of any posttrial motions which may have been filed. 155 Ill. 2d R. 303(a)(1). No such notice of appeal was filed here. Any error pertaining to the dispositional order has therefore been forfeited. See *In re R.A.B.*, 146 Ill. App. 3d 993, 996 (1986). More than that, the appellate court had no jurisdiction to go back and reconsider whether it was proper when made. See *In re Janira T.*, 368 Ill. App. 3d 883, 891 (2006).

In challenging this conclusion, Oscar H. contends that it would be anomalous to bar parties from seeking review of dispositional orders after time for appeal has passed given that we have held that dispositional orders may normally be modified at any time up to final closing and discharge of the proceedings if the court finds that it would be in the best interests of the child to make the modification. See *In re Austin W.*, 214 Ill. 2d 31, 43-44 (2005); 705 ILCS 405/2–23 (West 1996). What Oscar H. fails to appreciate is that asking an appellate court to review an order of the circuit court on appeal is fundamentally different from asking the circuit court itself to alter its

Rule 662(a) is therefore inapplicable.

-13-

own judgment, and the two avenues of recourse are subject to entirely different sets of rules and standards. Modifications, for example, must be carried out in a way not inconsistent with section 2–28 of the Juvenile Court Act (705 ILCS 405/2–28 (West 1996). 705 ILCS 405/2–23(2) (West 1996). That statute does not control review by the appellate court. We note, moreover, that, unlike appeals, modifications do not normally challenge the validity of the original order. Rather, they are typically directed to considerations that arise after the original dispositional order was entered. *In re Austin W.*, 214 Ill. 2d at 45.[4]

Even if there had been some basis for the appellate court to reach back and address the validity of the circuit court's prior order, its decision to reverse the circuit court's judgment terminating Oscar H.'s parental rights could not stand. It is true that the written order of February 25, 1997, finding L.W. to be abused did not include a statement of the factual basis supporting that determination, as required by section 2–21(1) of the Juvenile Court Act (705 ILCS 405/2–21(1) (West 1996)). As noted earlier in this opinion, however, the trial judge's ruling was predicated on stipulated facts that were read into the record, and the court clearly specified the facts it was taking into account in making its decision. The stipulations and the statements were, in turn, transcribed and included in the report of proceedings. There was nothing speculative about the trial judge's actions. What she did and why she did it were clearly spelled out. The lack of detail in the actual written order therefore worked no prejudice on any of the parties. It was a purely technical defect.

This situation is directly analogous to the one present in *In re Madison H.*, 215 Ill. 2d 364 (2005), which concerned a trial court's failure to comply with a comparable written-explanation requirement set forth in section 2–27(1) of the Juvenile Court Act (705 ILCS

---

[4]A change in circumstances is not a statutory precondition to a court's exercise of its authority to modify a dispositional order (*In re Austin W.*, 214 Ill. 2d at 45), but Oscar H. has not cited and we have not found any authority which would permit any party to challenge a dispositional order after the time for an appeal has passed on grounds which could have been raised on direct review but were not.

405/2–27(1) (West 1996)). Noting that the purpose of the writing requirement was to give the parties notice of the reasons forming the court's decision and to preserve the reasoning for appellate review, we concluded that those purposes would be served just as well by explicit oral findings stated during the hearing and then transcribed and made part of the record. *In re Madison H.*, 215 Ill. 2d at 374-75. Accordingly, we concluded that where an oral pronouncement is explicit and sufficient to advise the parties of the court's reasoning, the statutory requirement of a written explanation will be satisfied. *In re Madison H.*, 215 Ill. 2d at 377. We believe that rationale applies with equal force here. See also *In re Z.Z.*, 312 Ill. App. 3d 800, 803-04 (2000). The appellate court therefore erred when it reversed the circuit court's termination judgment based on the circuit court's prior order of February 25, 1997. Rather than revisiting the prior order, the appellate court should, instead, have decided Oscar H.'s challenge to the termination judgment on the merits. Having failed to do so on two prior occasions, it must do so now.

The final question raised by the petitions for leave to appeal filed by the State and the public guardian, and the last issue we must resolve, is whether the appellate court erred in holding that the circuit court should not have granted the motion *in limine* regarding Oscar H.'s custody of L.W.'s siblings. In considering this question, we begin by noting that the matter has different significance under our disposition than it did in the appellate court. Because the appellate court reversed the termination judgment based on the defects it perceived in the February 25, 1997, order, its discussion of the *in limine* motion did not alter the outcome of the case. It merely provided guidance to the circuit court in the event the State should initiate new termination proceedings.

The situation is now different. Because we have concluded that the termination judgment should not have been reversed based on the February 25, 1997, order, the issue before us is not whether the guidance given by the appellate court was correct. It is, instead, whether the circuit court's ruling on the *in limine* motion provides an alternative basis for reversing that court's judgment. We hold that it does not.

Generally speaking, evidentiary motions, such as motions *in limine*, are directed to the trial court's discretion. A trial court's ruling

-15-

on such motions will not be disturbed on review absent an abuse of that discretion. *People v. Harvey*, 211 Ill. 2d 368, 392 (2004). The threshold for finding an abuse of discretion is high. A trial court will not be found to have abused its discretion with respect to an evidentiary ruling unless it can be said that no reasonable man would take the view adopted by the court. See *Clayton v. County of Cook*, 346 Ill. App. 3d 367, 377 (2003). Moreover, even where an abuse of discretion has occurred, it will not warrant reversal of the judgment unless the record indicates the existence of substantial prejudice affecting the outcome of the trial. *Holston v. Sisters of the Third Order of St. Francis*, 165 Ill. 2d 150, 170-71 (1995).

Neither of these conditions was satisfied in this case. As we have discussed, the State sought to find Oscar H. unfit on two grounds: that he failed to maintain a reasonable degree of interest, concern or responsibility for L.W.'s welfare (see 750 ILCS 50/1(D)(b) (West 1996)) and that he had not made reasonable efforts to correct the conditions that were the basis for L.W.'s removal or made reasonable progress toward her return to him (see 750 ILCS 50/1(D)(m) (West 1996)). Both of these grounds deal specifically with the steps Oscar H. has taken with respect to L.W. How he has handled his parental responsibilities with respect to L.W.'s siblings is not germane to that question. We therefore cannot say that no reasonable person would have taken the circuit court's view in allowing the motion *in limine* and excluding the evidence.

We note, moreover, that while the circuit court granted the motion *in limine*, it nevertheless did hear testimony later in the proceedings that custody of L.W.'s siblings had been returned to Oscar H. The fact that Oscar H. was apparently fit to parent those children was therefore before the circuit court notwithstanding the court's ruling on the motion *in limine*. Although Oscar H. may not have been allowed to present the details of the care he provided to those other children, the appropriate course when faced with such a ruling was to make an offer of proof. *Snelson v. Kamm*, 204 Ill. 2d 1, 23-24 (2003).[5] No such

---

[5]An offer of proof is, in fact, normally mandatory in order to preserve for review the question of whether a motion *in limine* was properly granted. That requirement may be relaxed where it is apparent that the trial court

offer was made. We therefore have no basis for ascertaining how, if at all, that evidence may have altered the outcome of the case. As a result, we cannot say that allowing the motion *in limine* resulted in any material prejudice to Oscar H.

Before concluding our discussion, there is one final matter we must address. The public guardian, as attorney for L.W., argues that instead of remanding this cause to the appellate court for consideration of the merits of Oscar H.'s challenge to circuit court's judgment terminating his parental rights, this court should address that claim directly. We have declined a similar request by the public guardian in *In re Mark W.*, No. 104168 (April 3, 2008), a case involving factual and procedural circumstances comparable to those present in this case. After careful deliberation, we have decided to decline direct review here as well. Nevertheless, mindful of the time-sensitive nature of child custody proceedings, we accompany our remand with the same directive we issued in *In re Mark W.* The appellate court is to file its judgment in this matter within 60 days of the issuance of this court's mandate.

For the foregoing reasons, the judgment of the appellate court is reversed, and the cause is remanded to that court for review, on the merits, of the circuit court's judgment terminating Oscar H.'s parental rights. The appellate court is hereby directed to file its judgment in this matter within 60 days of the issuance of this court's mandate.

*Reversed and remanded*
*with directions.*

---

clearly understood the nature and character of the evidence sought to be introduced. *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 495 (2002). Although the appellate court believed this to be such a case (see 367 Ill. App. 3d at 857), its analysis appears to have been based on the assumption that the excluded evidence consisted only of the fitness determinations and awards of custody made in the siblings' cases. Based upon our review of the record, it appears that the evidence Oscar H. sought to admit and which the *in limine* ruling excluded extended to other details about Oscar H.'s parenting ability, including his success in meeting social service requirements.