# Illinois Official Reports

## Appellate Court

---

### *People v. Gaciarz*, 2017 IL App (2d) 161102

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MAREK P. GACIARZ, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-16-1102 |
| Filed | December 19, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 15-CF-43; the Hon. Donald Tegeler, Jr., Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Terry A. Ekl, Vincent C. Mancini, and Kevin A. Halverson, of Ekl, Williams & Provenzale, LLC, of Lisle, for appellant.<br><br>Joseph H. McMahon, State's Attorney, of St. Charles (Patrick Delfino, Lawrence M. Bauer, and Sally A. Swiss, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.<br>Presiding Justice Hudson and Justice Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1 Following a bench trial, defendant, Marek P. Gaciarz, was convicted of involuntary sexual servitude of a minor (720 ILCS 5/10-9(c) (West 2014)), traveling to meet a minor (720 ILCS 5/11-26(a) (West 2014)), and grooming (720 ILCS 5/11-25(a) (West 2014)). The State's evidence established that defendant responded via text messages to an online advertisement for a female prostitute. The advertisement made no mention of a minor. An officer from the Aurora police department placed the advertisement as part of an undercover sting operation conducted with the assistance of special agents from the United States Department of Homeland Security. Defendant was arrested inside a hotel room after he exchanged money with a special agent. The State argued that defendant's intent to have sex with a minor was established through his exchange of text messages in response to the advertisement. Defendant maintained that he intended to have sex with an adult and that he did not understand the references in the text messages to mean that he would be meeting with a minor. On appeal, defendant contends that (1) the evidence was insufficient to prove him guilty beyond a reasonable doubt, (2) the trial court erroneously allowed an incomplete video recording to be admitted into evidence, and (3) his trial counsel provided ineffective assistance by failing to inspect the video-recording equipment. We affirm.

¶ 2 **I. BACKGROUND**

¶ 3 Many of the facts in this case are undisputed. On January 8, 2015, defendant responded via text messages to the phone number listed in an advertisement for a female prostitute on the website "backpage.com." The advertisement was titled: "young warm and ready :) — 18." It featured a picture of a brunette female wearing cut-off jean shorts and a midriff-baring shirt. The female's face could not be seen. The advertisement read as follows:

> "its ssooooooo cold outside, come warm up with a hot little co
>
> ed. Im young, eager to please and more than willing to meet all
>
> your desires. come keep me warm and I promise to return the
>
> favor:0:):) ask about my two for one special
>
> text me at [xxx-xxx-xxxx]..
>
> 100 donation for hh
>
> 150 donation full hour
>
> Poster's age: 18"

¶ 4 In responding to the advertisement, defendant unknowingly exchanged a series of text messages with Aurora police officer Erik Swastek. The pertinent text messages read as follows:

> "Defendant: Hey how you doing
>
> Swastek: hey sweetie
>
> Defendant: I like your ad do you have more pic
>
> Swastek: sorry baby, I don't send pics, too risky cause of mygirls age
>
> Defendant: Okay where you guys live
>
> Swastek: what are u looking for

- 2 -

Defendant: I would like to spend 1 h

Swastek: ok its 150 for the hour, which girl u want, i got a 14 yo blnd and 15 yo brunette

Defendant: Brunette

Swastek: ok baby, what do u want for the hour

Defendant: Kisses and bj

Swastek: ok, you have to wear a condom for oral, I don't want my daughter catching anything

Swastek: is that cool

Defendant: Okay no problem am young and I wanna be safe too"

In the text messages that followed, Swastek gave defendant the address for an Aurora hotel. When defendant arrived at the designated room, he was to knock on the door and say a specific phrase. (We have omitted any further details for fear of compromising future operations.)

¶ 5    Inside the hotel room, Special Agent Melissa Siffermann assumed the role of the "mother" who had exchanged the text messages with defendant. Special Agent Geoffrey Howard monitored the interaction from an adjoining room, using video-recording equipment. Howard had placed cameras inside Siffermann's room and in the hallway that led to Siffermann's room. During discovery, it was revealed that the video recording from inside Siffermann's room was separated into four segments with gaps of unrecorded time between the segments. The time stamps indicate that the entire recording took place between approximately 11:40 and 11:43 p.m. The following events are depicted in the four segments.

¶ 6    The first segment is approximately six seconds long. The television can be heard in the background, and there is an audible knock on the hotel room door. There is a six-second gap of unrecorded time between the first and second segments.

¶ 7    The second segment is approximately 15 seconds long. Siffermann answers the door and introduces herself as "Michelle." She appears to be in the process of brushing her teeth. She exchanges pleasantries with defendant as she removes some items from a chair. She asks defendant if he would like to sit down and says that she is "sorry about the mess." There is a seven-second gap of unrecorded time between the second and third segments.

¶ 8    The third segment is approximately 13 seconds long. Siffermann is out of view, but defendant can be seen sitting on a chair. Siffermann is heard saying that she wants to "make sure everyone is good." She asks defendant, "you still want both for the hour?" Defendant pauses before asking, "[c]an I see girls?" The recording abruptly ends just as defendant makes this request. There is a 33-second gap of unrecorded time between the third and fourth segments.

¶ 9    The fourth segment is 1 minute and 18 seconds long. Defendant hands something from his pocket to Siffermann. She responds by confirming that defendant wants to purchase a "full hour." Defendant agrees and states that he brought "protection." Siffermann advises defendant that there can be "nothing rough" and "no anal." She explains that, although she will not be in the hotel room, she will be nearby. She concludes by saying, "they'll be up in a second, I'm just going to finish brushing my teeth." Siffermann enters the restroom and closes the door behind her. Seconds later, Aurora police officers enter Siffermann's room from the adjoining room and place defendant under arrest.

¶ 10    Defendant filed a pretrial motion *in limine* to exclude the entire hotel-room recording on the basis that it was unreliable. Defendant argued that the 33-second gap of unrecorded time between the third and fourth segments was particularly problematic, as that was the "most important portion" of his conversation with Siffermann. In its written response, the State argued that Siffermann had provided a written report of what happened during the 33-second gap and that she would be subject to cross-examination regarding the contents of her written report.

¶ 11    At the hearing on defendant's motion *in limine*, Howard testified that the Department of Homeland Security and the Aurora police department had been conducting joint operations aimed at luring individuals "who might be interested in having commercial sex with underage people or people who are being trafficked." Howard was the special agent in charge of three such joint operations. Defendant was arrested during the third operation. Howard testified that, for each operation, he set up the video-recording equipment and monitored a live feed from the adjoining hotel room. On the night in question, one other "target" had been arrested before defendant arrived at the hotel room. Howard deactivated the recording equipment following the first arrest; then he reactivated the equipment when he learned of defendant's impending arrival. When the operation concluded, Howard gathered the equipment and gave it to Department of Homeland Security technical operations staff. The recording was then placed on a compact disc. Howard made copies of the disc for the Kane County State's Attorney and the Aurora police department. As he was making the copies, Howard observed that the hallway recording was in one continuous segment but the hotel-room recording was broken into four "chopped-up" segments. He recalled from past operations that recordings had been broken into two segments, but he had never seen a recording broken into four segments. Howard testified that he did not stop the recording when defendant was inside the hotel room, nor did he see anyone stop the recording. He added that the technical operations staff could not explain the breaks in the recording. Howard admitted that there were no such issues with the recording of the first target's arrest. He also admitted that the same recording equipment had malfunctioned during a subsequent operation, "where it didn't record anything at all."

¶ 12    On cross-examination, defense counsel inquired as to the type of camera that was used. Howard would not disclose that type of "tradecraft," for fear of compromising future operations. When defense counsel pressed the issue, the State objected on grounds of relevance. The trial court ruled that the type of camera used was irrelevant but that defense counsel could explore the method of recording, *i.e.*, whether it was wireless or digital. Thereafter, the following exchange took place between defense counsel and the trial court:

> "MR. PISSETZKY [(DEFENSE COUNSEL)]: Your Honor, I appreciate it. I think, as for [defendant], I have the right to ask [*sic*] the camera to be brought and for me to inspect it if there's an indication that it was not working properly.
>
> THE COURT: Well, that's not the motion you filed.
>
> MR. PISSETZKY: Right. Okay.
>
> THE COURT: If you want a motion to inspect the camera, I'm four days before trial and I don't have a motion to inspect the camera—
>
> MR. PISSETZKY: Okay.
>
> THE COURT: —before me. So if you thought you had a right to it, I would have filed that motion a long time ago.

MR. PISSETZKY: Okay.

THE COURT: You filed a motion to keep out the video, so I'm allowing you to ask now how it was recorded based upon that."

When defense counsel asked Howard whether the camera was wireless, Howard again declined to disclose the "method of transmission." Howard acknowledged that a digital recording device was placed in a set position and that he lacked the capability to pan, tilt, or zoom. He further acknowledged that the recording was downloaded using a computer, but he noted that he was not present when the technical operations staff prepared the compact disc.

¶ 13 Siffermann testified that the recorded segments constituted an accurate portrayal of what happened in the hotel room. When asked what happened during the 33-second gap, Siffermann claimed that she told defendant that she would call her "daughters" to come up from the hotel pool. On cross-examination, Siffermann acknowledged that she made no reference to her "daughters" in any of the four recorded segments or in her written report.

¶ 14 In announcing its ruling, the trial court found that Howard had testified credibly regarding his lack of knowledge as to what caused the gaps of unrecorded time, that Siffermann had testified credibly regarding the accuracy of the recorded segments, and that there had been no tampering with the recording. On those bases, the trial court ruled that the State would be allowed to introduce the recorded segments after laying a proper foundation. The trial court went on to observe that defendant had asked whether he could "see the girls" just prior to the 33-second gap of unrecorded time. Defendant's statement was ruled inadmissible, but Siffermann was permitted to testify as to what was said during the 33-second gap, as her testimony in that regard would be subject to cross-examination.

¶ 15 Following two continuances, defendant's one-day bench trial took place on June 21, 2016. It was conducted with the assistance of a Polish interpreter.

¶ 16 The State's first witness was Aurora police officer Alfredo Dean. He explained that his department began partnering with the Department of Homeland Security in 2014. Each operation was conducted the same way. A false advertisement was placed on the website backpage.com in an attempt to lure individuals to the same Aurora hotel. On cross-examination, Dean acknowledged that the advertisement in question was placed on the "adults only" section of backpage.com, which requires users to confirm that they are at least 18 years old. Dean further acknowledged that the advertisement made no reference to a minor.

¶ 17 The State's second witness was Howard. He testified consistently with his testimony from the hearing on defendant's pretrial motion *in limine*. Additionally, Howard testified that backpage.com is a website known for offering "escorts." According to Howard, an advertisement will be removed from the website if it references a minor. The joint operations would therefore use an advertisement containing "suggestive language." Howard explained that, when individuals respond to the advertisement, "we try to make it very clear within the first initial text conversation with them, that hey, this person that you're seeking to have sex with is underage, under the age of, you know, 17, 18."

¶ 18 The State's third witness was Swastek. He testified that he posted the advertisement in question during the early afternoon on January 8, 2015. Although numerous people responded to the advertisement, only two showed up at the hotel. Defendant initially responded to the advertisement around 8:40 p.m. Swastek testified that, when defendant was arrested at 11:43 p.m., he was found with a cell phone and a three-pack of condoms. A search warrant was

obtained for the cell phone. Information revealed from the search corroborated that the text messages in question had been exchanged with that cell phone, which belonged to defendant.

¶ 19 Swastek testified that he had been trained to recognize the vernacular used in underage sex trafficking. A printout with the exchange of text messages between Swastek and defendant was admitted into evidence. Swastek testified that "yo" was an abbreviation for "year old." Also, "blnd" was an abbreviation for "blonde," and "bj" was an abbreviation for "blow job," which is a common term referencing oral sex. Swastek had used those same abbreviations during the other joint operations.

¶ 20 On cross-examination, Swastek admitted that there were no actual minors involved in the operation that led to defendant's arrest, nor were there any agents posing as minors or any pictures of actual or purported minors. The questioning then turned to defendant's request for a "pic" and Swastek's response, "sorry baby, I don't send pics, too risky cause of mygirls age." According to Swastek, his response was meant to convey to defendant that the girls were underage and that the "mother" did not want to get into trouble. Regarding the other information that was retrieved from defendant's cell phone, Swastek acknowledged that there were unrelated text messages in a language that he assumed was Polish.

¶ 21 The State's fourth and final witness was Siffermann. She testified that she had been involved in about a dozen operations investigating child sex trafficking at both the state and federal levels. In past operations, she had assumed the role of a teenage girl. She explained that, for the operation that led to defendant's arrest, she was to assume the role of a mother who was selling her daughters to engage in commercial sex. At this point, the four segments of the video recording from inside the hotel room were admitted into evidence and played for the trial court.

¶ 22 Siffermann testified that defendant handed her $150 cash at the beginning of the fourth segment. Regarding the 33-second gap between the third and fourth segments, Siffermann testified that she discussed the rules that would apply for sexual activity with her "daughters." This included telling defendant that condoms were necessary for oral sex and that there would be no "rough" sex or anal sex allowed. On cross-examination, Siffermann admitted that there had been no mention of "daughters," "minors," or "teenagers" at any point during the recorded conversations. Rather, Siffermann and defendant had both made references to "girls."

¶ 23 The State rested its case following Siffermann's testimony. Defendant then made a motion for a directed finding, which the trial court denied. The defense declined to put on any evidence, and the parties proceeded to closing arguments.

¶ 24 The trial court announced its ruling the next day, on June 22, 2017. After reviewing all the evidence and noting that the criminal statutes in question included provisions for attempted criminal acts, the trial court focused on the contents of the text messages. Regarding the references "14 yo" and "15 yo," the trial court found that they combined with the other circumstantial evidence to prove beyond a reasonable doubt that defendant knowingly attempted to have sex with a person who was either 14 or 15 years old. The trial court commented, "I see no other construction that I can come up with, and I have racked my brain for the innocent construction of that; and quite frankly, I see none." Accordingly, defendant was found guilty of all three charges.

¶ 25 On July 18, 2017, defendant filed a motion to set aside the judgment or for a new trial. He contended that the State had failed to prove him guilty beyond a reasonable doubt and that the trial court had erroneously denied his pretrial motion *in limine*. Thereafter, defendant retained

new counsel, and his trial counsel was permitted to withdraw. Defendant's new counsel filed an amended posttrial motion, adding a contention that trial counsel was ineffective for failing to request an inspection of the video-recording equipment.

¶ 26 The trial court denied defendant's amended posttrial motion on December 9, 2016, and the parties proceeded directly to a sentencing hearing. The trial court agreed with the parties that the offense of grooming merged with the offense of traveling to meet a minor. Defendant was sentenced to serve a six-year prison term for involuntary sexual servitude of a minor, with a concurrent two-year term imposed for traveling to meet a minor. Defendant filed a timely notice of appeal on December 19, 2016.

¶ 27                                   II. ANALYSIS

¶ 28 Defendant's primary contention on appeal is that the State's evidence was insufficient to prove him guilty beyond a reasonable doubt. This includes an argument that his convictions were improper because the undercover sting operation did not involve an actual minor, a person pretending to be a minor, or even a picture of an actual or purported minor. The parties and the trial court have characterized this as an issue of first impression.

¶ 29 We begin by looking to the specific language of the criminal statutes under which defendant was convicted. The offense of involuntary sexual servitude of a minor is defined by section 10-9(c) of the Criminal Code of 2012 (Code):

> "A person commits involuntary sexual servitude of a minor when he or she knowingly recruits, entices, harbors, transports, provides, or obtains by any means, or *attempts to recruit, entice, harbor, provide, or obtain by any means, another person under 18 years of age*, knowing that the minor will engage in commercial sexual activity, a sexually-explicit performance, or the production of pornography, or causes or attempts to cause a minor to engage in one or more of those activities and:
>
>> (1) there is no overt force or threat and the minor is between the ages of 17 and 18 years;
>>
>> (2) there is no overt force or threat and the minor is under the age of 17 years; or
>>
>> (3) there is overt force or threat." (Emphasis added.) 720 ILCS 5/10-9(c) (West 2014).
>
> Here, the State alleged in its indictment that defendant knowingly attempted to obtain by any means a person under 18 years of age, knowing that the minor would engage in commercial sexual activity, and that there was no overt force or threat and the minor was under the age of 17 years.

¶ 30 Section 11-26 of the Code defines the offense of traveling to meet a minor:

> "A person commits the offense of traveling to meet a minor when he or she travels any distance either within this State, to this State, or from this State by any means, attempts to do so, or causes another to do so or attempt to do so *for the purpose of engaging in any sex offense* as defined in Section 2 of the Sex Offender Registration Act, or to otherwise engage in other unlawful sexual conduct with a child or *with another person believed by the person to be a child* after using a computer on-line service, Internet service, local bulletin board service, or any other device capable of electronic data storage or transmission to seduce, solicit, lure, or entice, or to *attempt to seduce, solicit, lure, or entice*, a child or a child's guardian, or *another person believed by the person to*

*be a child or a child's guardian*, for such purpose." (Emphases added.) 720 ILCS 5/11-26(a) (West 2014).

Here, the State alleged that defendant knowingly traveled a distance within the state for the purpose of engaging in unlawful sexual conduct with a person whom he believed to be a child, after using a device capable of electronic transmission to attempt to solicit a person whom he believed to be a child's guardian for such purpose.[1]

¶ 31    As can be seen, defendant was not charged with attempting to commit these offenses under the separate attempt statute. See 720 ILCS 5/8-4(b) (West 2014) ("A person commits the offense of attempt when, with intent to commit a specific offense, he or she does any act that constitutes a substantial step toward the commission of that offense."). Rather, section 10-9 criminalizes the attempted commission of the offense of involuntary sexual servitude of a minor in the same manner as though the crime were completed. Similarly, under section 11-26, a person commits the offense of traveling to meet a minor by (1) traveling for the purpose of engaging in unlawful sexual conduct with a person whom he believed to be a child, after (2) attempting to solicit a person whom he believed to be a child's guardian, (3) for such purpose.

¶ 32    Here, defendant argues that, "[b]ecause there was no minor, either real or purported, used during this sting operation, the State failed to prove an essential element of the respective criminal offenses." In rejecting this argument, the trial court relied largely on a recent decision from the Eighth Circuit of the United States Court of Appeals.

¶ 33    In *United States v. Wolff*, 796 F.3d 972, 972-73 (8th Cir. 2015), the defendant responded to an online advertisement that offered "sweet young candy." When he requested a nude picture of the minor who would be made available, an undercover detective sent him a picture of an adult female posing as a 16-year-old. The defendant was arrested after he arrived at the designated hotel with $200 cash and condoms in his possession. He was charged with attempted sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591 and 1594. *Wolff*, 796 F.3d at 973. Under section 1591(a), "[w]hoever knowingly *** recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person *** knowing, or *** in reckless disregard of the fact *** that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act," has violated the law. 18 U.S.C. § 1591(a) (2012). Under section 1594(a), an attempt to violate section 1591(a) is punishable "in the same manner as a completed violation of that section." 18 U.S.C. § 1594(a) (2012).

¶ 34    The defendant in *Wolff* argued that he could not be convicted of attempting to traffic a minor unless there was an " 'actual minor' " being trafficked. *Wolff*, 796 F.3d at 974. The court disagreed, holding that the defendant's "subjective intent to engage in a commercial sex act with someone he believed to be a minor female, and the substantial steps he took toward commission of that offense by arriving at the set meeting place with $200 cash and condoms, constitute attempted sex trafficking of a minor in violation of 18 U.S.C. § 1594(a)." *Id.* at 975.

¶ 35    In *Wolff*, the court followed the reasoning of *United States v. Meek*, 366 F.3d 705 (9th Cir. 2004), which had considered the same issue in the context of a similar federal statute. Under 18 U.S.C. § 2422(b), "[w]hoever *** knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, *or attempts to do so*," has

---

[1]We note that the offense of grooming contains elements that track the latter elements of the offense of traveling to meet a minor. See 720 ILCS 5/11-25 (West 2014).

violated the law. (Emphasis added.) 18 U.S.C. § 2422(b) (2000). The defendant in *Meek* argued that the statute was inapplicable because his conversations had been with an undercover detective rather than an actual minor. In rejecting this argument, the court held in relevant part:

> "In short, § 2422(b) criminalizes the attempt to induce a minor to engage in sexual activity, and [the defendant] intended, and took steps toward, persuading or inducing a minor. That he did not succeed is of no consequence. The fact that [the defendant] was mistaken in his belief that he was corresponding with a minor does not mitigate or absolve his criminal culpability; the simple fact of [the defendant's] belief is sufficient as to this element of a § 2422(b) violation." *Meek*, 366 F.3d at 720.

¶ 36     We note that the reasoning from *Wolff* and *Meek* has been employed by the Seventh Circuit of the United States Court of Appeals. Like the defendant in *Meek*, the defendant in *United States v. Coté*, 504 F.3d 682, 687 (7th Cir. 2007), was charged under the attempt provision found in 18 U.S.C. § 2422(b) (2000). He argued that the district court had erroneously instructed the jury that he could be found guilty if he believed, albeit mistakenly, that the "victim" was a minor. The court disagreed, holding that the government's burden was to prove that the defendant "acted with the specific intent to commit the underlying crime and that he took a substantial step towards completion of the offense." *Coté*, 504 F.3d at 687. The court held that, "[b]y proving that [the defendant] intended to entice a person whom he believed to be a minor into sexual acts and that he flew to Chicago to meet her, the Government has fulfilled this burden." *Id.* at 688.

¶ 37     We acknowledge that the facts in this case are slightly distinguishable from those in the cases discussed above. For instance, the defendant in *Wolff* requested a nude picture of a 16-year-old girl, and the undercover detective responded by sending a picture of an adult female posing as a 16-year-old. *Wolff*, 796 F.3d at 973. Here, defendant asked for a picture of the female featured in the advertisement, and Swastek responded by texting: "sorry baby, I don't send pics, too risky cause of mygirls age." In both *Meek* and *Coté*, the defendant conversed with an undercover detective who was posing as an actual minor. *Meek*, 366 F.3d at 710; *Coté*, 504 F.3d at 683-84. Here, Swastek's text messages establish that he was posing only as the "mother" of two "daughters" who were available for commercial sexual activity. Thus, unlike in the cases discussed above, the identity of a purported minor in this case was not established by way of a picture or a direct conversation.

¶ 38     However, we disagree with defendant that such evidence is necessary to establish an essential element of the charged offenses. The common thread between *Wolff*, *Meek*, and *Coté* is that each case involved the prosecution of an attempted crime involving a nonexistent minor. Evidence that a defendant conversed with a person posing as a minor or was provided with a picture of a purported minor is obviously relevant for establishing the *mens rea*, but this is no *sine qua non*.

¶ 39     We note that, while the parties have framed this as an issue of first impression, this court has addressed the commission of attempted crimes involving nonexistent minors. For instance, in *People v. Scott*, 318 Ill. App. 3d 46 (2000), we considered whether the defendant could be convicted of attempted predatory criminal sexual assault of a child, based on his communications with a detective who was posing as a 12-year-old boy. The defendant in *Scott* had expressed a desire to meet the purported child after sending him nude images of young males engaging in sex acts. He was arrested after he arrived at an agreed-upon location, and he then made statements to investigators confirming that he would have had sex with the boy if

the boy had been willing. *Id.* at 49. This evidence was found sufficient to prove that the defendant had committed a substantial step toward the commission of the crime, with the requisite intent. *Id.* at 55.

¶ 40　　　In *People v. Patterson*, 314 Ill. App. 3d 962, 964 (2000), an undercover detective adopted the screen name of "Yacoo" and portrayed himself as a 15-year-old boy named "Rob." Through an Internet chat room, the defendant offered to perform oral sex on Yacoo/Rob and arranged to meet him. The defendant was arrested after he arrived at the designated location. *Id.* at 966. In affirming his conviction of attempted aggravated criminal sexual abuse, this court held in pertinent part:

> "Given that Yacoo/Rob did not actually exist, defendant had taken every possible step he could have taken in order to commit the offense of aggravated criminal sexual abuse. Accordingly, we hold that defendant's conduct constituted a substantial step and determine that there was sufficient evidence from which the trial court could conclude that defendant committed the crime of attempt." *Id.* at 971.

¶ 41　　　In *People v. Ruppenthal*, 331 Ill. App. 3d 916, 917-18 (2002), the defendant was convicted of indecent solicitation of a child after communicating with a detective whom he believed to be a 14-year-old girl. At the time, the statute described the offense as when a person over the age of 17 years "knowingly solicit[ed] a child or one whom he or she believe[d] to be a child to perform an act of sexual penetration or sexual conduct." 720 ILCS 5/11-6(a) (West 2000). The defendant argued that, although he had intended to commit a sexual act with a child, he had committed no crime by speaking words of solicitation to an adult. *Ruppenthal*, 331 Ill. App. 3d at 920. In affirming the defendant's conviction, this court held that "[t]he fact that [the] defendant's words were transmitted to an adult does not negate [the] defendant's belief that he was speaking to a minor, which is the culpable act defined by the statute." *Id.*

¶ 42　　　Consistent with *Wolff*, *Meek*, and *Coté*, we said nothing in *Scott*, *Patterson*, or *Ruppenthal* to suggest that proving the commission of an attempted crime involving a nonexistent minor requires, at the very least, establishing the presence of the purported minor through a picture or a direct conversation. Rather, the sufficiency of the evidence in these types of cases turns on whether a defendant intended to commit a specific offense and whether he did anything that constituted a substantial step toward the commission of that offense. See 720 ILCS 5/8-4(b) (West 2014). We therefore reject defendant's argument that the lack of evidence establishing the existence of a purported minor precluded the State from proving an essential element of the offenses in question.

¶ 43　　　We now turn to the issue of whether the State's evidence was sufficient to prove defendant guilty beyond a reasonable doubt. When a defendant challenges the sufficiency of the evidence, it is not the function of this court to retry him. *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (adopting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). Rather, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Collins*, 106 Ill. 2d at 261 (quoting *Jackson*, 443 U.S. at 319). We will not substitute our judgment for that of the fact finder on questions regarding the weight to be given to a witness's testimony, the credibility of the witnesses, the resolution of inconsistencies and conflicts in the evidence, and the reasonable inferences to be drawn from the testimony. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). This standard applies regardless of whether the evidence is direct or circumstantial, and circumstantial

evidence meeting this standard is sufficient to sustain a criminal conviction. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). We will not reverse a conviction unless the evidence is "so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Collins*, 106 Ill. 2d at 261.

¶ 44     Here, we agree with the trial court that defendant's text messages with Swastek provide the most compelling evidence of his culpable mental state. The advertisement, although suggestive, is insufficient to establish defendant's intent to engage in commercial sexual activity with a minor. However, when the advertisement is combined with the text messages, a rational trier of fact could find that the essential elements of the charged crimes were proved beyond a reasonable doubt.

¶ 45     There is no dispute that defendant's initial response to the advertisement established his intent to engage in commercial sexual activity with a purportedly 18-year-old female. When Swastek declined defendant's request for a "pic," explaining that it was "too risky cause of mygirls age," defendant was notified of two critical conditions: (1) he was communicating with the guardian of the person who would be made available for the commercial sexual activity, and (2) there was a risk associated with that person's age. When defendant was asked, "which girl u want, i got a 14 yo blnd and 15 yo brunette," he was notified that the commercial sexual activity would indeed be undertaken with a minor.

¶ 46     Defendant argues extensively that a language barrier prevented him from understanding that "yo" meant "year old." But even accepting the plausibility of this argument, it remains that the numbers "14" and "15" were used to describe two "girls" who would be made available for commercial sexual activity by their guardian. Thus, when defendant responded to Swastek's inquiry by texting the word "Brunette," he signaled his intention to engage in commercial sexual activity with a "girl" who had just been described by her guardian as "15." Because defendant had also been notified that there was a risk associated with "mygirls age," the evidence aside from the "yo" reference was sufficient to prove that defendant knowingly sought to engage in commercial sexual activity with a minor. See 720 ILCS 5/4-5(b) (West 2014) (providing that a person acts "knowingly" when he is "consciously aware that that result is practically certain to be caused by his conduct"). When defendant subsequently traveled to the designated hotel room with $150 cash and a three-pack of condoms, he committed a substantial step toward the commission of the charged offenses. See *Wolff*, 796 F.3d at 975. We therefore hold that the evidence in this case was sufficient to convict defendant of involuntary sexual servitude of a minor and traveling to meet a minor.

¶ 47     That brings us to defendant's contention that the trial court erroneously denied his pretrial motion *in limine* and allowed the incomplete video recording from inside Siffermann's hotel room to be admitted into evidence. A motion *in limine* is addressed to the trial court's inherent power to admit or exclude evidence, and a reviewing court will not reverse the trial court's ruling on such a motion absent an abuse of discretion. *People v. Williams*, 188 Ill. 2d 365, 369 (1999). An abuse of discretion is found when the trial court's ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *People v. Hall*, 195 Ill. 2d 1, 20 (2000). However, a trial court's erroneous denial of a defendant's motion *in limine* will not warrant a reversal unless the record indicates the existence of substantial prejudice affecting the outcome of the trial. *In re Leona W.*, 228 Ill. 2d 439, 460 (2008); *People v. Bond*, 405 Ill. App. 3d 499, 512 (2010).

¶ 48    The parties note that " '[a] partially inaudible sound recording is admissible unless the inaudible portions are so substantial as to render the recording untrustworthy as a whole.' " *People v. Hunt*, 234 Ill. 2d 49, 66 (2009) (quoting *People v. Manning*, 182 Ill. 2d 193, 212 (1998)). "The decision whether to admit a partially inaudible sound recording is a matter within the sound discretion of the trial court." *Id.* Although these standards speak specifically to the admissibility of partially inaudible sound recordings, we note that they have also been applied in addressing the admissibility of incomplete video recordings. *People v. Vannote*, 2012 IL App (4th) 100798, ¶ 28.

¶ 49    Here, defendant argues that the trial court's ruling undermined his ability to impeach Siffermann's testimony that, during the 33-second gap of unrecorded time, she discussed the rules for sexual activity with her "daughters." Defendant also argues that it undermined his ability to demonstrate the lack of evidence showing that he knowingly solicited a minor for sex. However, as we discussed above, we agree with the trial court that the text messages and the suggestive language in the advertisement combine to establish sufficient evidence of defendant's guilt. Therefore, even if we agreed with defendant that the 33-second gap of unrecorded time rendered the recording untrustworthy as a whole, the trial court's erroneous ruling would not be so prejudicial as to warrant a new trial.

¶ 50    Finally, we briefly address defendant's third and final contention: that his trial counsel was ineffective for failing to fully investigate the video-recording equipment. To prevail on a claim that he received ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, there must be a showing that trial counsel's performance fell below an objective standard of reasonableness. Second, the defendant must show that trial counsel's performance was prejudicial, meaning that there is a reasonable probability that the result of the proceeding would have been different absent trial counsel's deficient performance. *Id.* at 691-94. "The failure to satisfy either the deficiency prong or the prejudice prong of the *Strickland* test precludes a finding of ineffective assistance of counsel." *People v. Enis*, 194 Ill. 2d 361, 377 (2000). Courts may therefore resolve ineffectiveness claims by reaching only the prejudice component of *Strickland*, "for lack of prejudice renders irrelevant the issue of counsel's performance." *People v. Coleman*, 183 Ill. 2d 366, 397-98 (1998).

¶ 51    Here, we reject defendant's ineffective-assistance-of-counsel claim for the same reason that we rejected his arguments with regard to the admission of the video recording from inside Siffermann's hotel room. Defendant argues that, by investigating the video-recording equipment, trial counsel could have determined whether the missing 33 seconds could be recovered, whether the equipment malfunctioned, or whether the recordings were altered during the copying process. However, for the reasons discussed above, none of this establishes a reasonable probability that the result of the trial would have been different absent trial counsel's allegedly deficient performance. Our conclusion in this regard renders irrelevant the issue of trial counsel's performance. See *id.*

¶ 52                                    III. CONCLUSION

¶ 53    The judgment of the circuit court of Kane County is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2016); see also *People v. Nicholls*, 71 Ill. 2d 166, 178 (1978).

¶ 54        Affirmed.