# In The Iowa Supreme Court

No. 22–1681

Submitted October 9, 2024—Filed November 8, 2024

**State of Iowa,**

Appellee,

vs.

**Corey Robert Fenton,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Samantha Gronewald, Judge.

The defendant seeks further review of a court of appeals decision affirming his conviction for solicitation of commercial sexual activity. **Decision of Court of Appeals Vacated; District Court Judgment Reversed and Case Remanded for Dismissal.**

Christensen, C.J., delivered the opinion of the court, in which all participating justices joined. May, J., took no part in the consideration or decision of the case.

Martha J. Lucey, State Appellate Defender, and Josh Irwin (argued), Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General; Nicholas E. Siefert (argued) and Kyle Hanson (until withdrawal), Assistant Attorneys General; and Morgan Smith, student legal intern, for appellee.

**Christensen, Chief Justice.**

After months of online conversations with an undercover police officer posing as a fifteen-year-old girl, the defendant arranged to meet the girl for sex in the shower room of a gas station. Police arrested the defendant upon arrival and charged him with solicitation of commercial sexual activity under Iowa Code section 710A.2A (2022). At trial, the defendant argued through a variety of motions that there was insufficient evidence to support this charge because he did not offer to exchange or promise to exchange anything of value in return for sexual activity. The district court rejected these motions, and a jury convicted the defendant. The court of appeals conditionally affirmed the defendant's conviction and remanded the case for the district court to reconsider the defendant's motion for new trial under the correct standard.

On further review, we reverse the defendant's conviction and remand for dismissal because the evidence was insufficient to show that he was attempting to engage in commercial sexual activity under Iowa Code section 710A.1(1). The defendant's behavior was deplorable, but he did not give or promise the fifteen-year-old any item of value in exchange for a sex act or sexually explicit performance. Any offers that the defendant made were either *to facilitate* a sexual relationship with the fifteen-year-old—*not in exchange for* sex—or were vague and did not rise to the necessary level to constitute a promise.

### I. Background Facts and Proceedings.

In November 2021, thirty-six-year-old Corey Fenton started messaging a profile on Facebook that he thought belonged to a fifteen-year-old girl named Neveah. Neveah was actually a detective engaged in a sting operation for the Altoona Police Department to catch offenders who solicit minors for sex. As

Fenton pushed Neveah to "hang," she told him that she did not have a car and could not meet up with him at her house because of her mom.

Neveah made various excuses for being unable to meet up with Fenton when he continued to press her about it. When Neveah told Fenton that she could not meet at his place, Fenton suggested renting a shower room at the Flying J in Altoona because Neveah had told him she lived in Altoona. Neveah agreed but did not give Fenton a set date, telling him that she could let him know when her mom was gone and then meet him at the Flying J. The two discussed money, and Fenton asked Neveah, "[I] have some money and you have?" Neveah did not give Fenton a concrete answer.

On January 2, 2022, Neveah asked Fenton if he was "still down for the showers at flyin j?" Fenton confirmed that he was and asked Neveah for details about what she would do with him there. Neveah replied, "What u going 2 do for it." Fenton asked her what she wanted, and she said she did not know.

Additionally, he wondered about the possibility of a threesome with Neveah and her friend. Neveah asked if it was okay if her friend was also fifteen. Fenton confirmed that was not an issue. Neveah inquired about what Fenton would do for a threesome, and he replied, "[W]hat do i need to do lol." Neveah answered, "Girls like food and clothes lol," and Fenton said, "[I] have no prob spoiling a [little]."

He suggested meeting that Friday "if all works out." Neveah later told Fenton that she could meet him at 1:00 p.m. at the Flying J in Altoona that Friday, January 7. She asked if he would bring her food to the Flying J, and Fenton replied, "[S]ure lol," quickly followed by, "this cock." When Neveah asked Fenton what he wanted to "do after our time in the shower," Fenton explained that he liked to smoke marijuana. Neveah asked if he had any, and Fenton told

her he would have to get more but smoking marijuana together "[s]ounds like a good way to spend the afternoon lol."

On the day of their scheduled meeting, Fenton told Neveah that he was having car troubles and offered to arrange an Uber ride for her to his apartment. She declined, explaining she had to stay close to home in case her mom returned. Fenton said that he could not afford both the roundtrip Uber to the Flying J and the shower rental, but Neveah told him not to worry because she had stolen money from her mom and could help him cover costs. This prompted Fenton to order an Uber ride to the Flying J.

He messaged Neveah that he was on his way, so she should "buy a shower from the clerk then go upstairs and wait in a chair." Neveah informed him that she did not know how to rent a shower, and Fenton told her to stay put and wait for him. When Fenton arrived at the Flying J, he ran upstairs towards the shower, where he discovered a law enforcement team waiting for him. The team took Fenton into custody and transported him to the Altoona Police Department for an interview.

The State subsequently charged Fenton with solicitation of commercial sexual activity, a class "D" felony, in violation of Iowa Code section 710A.2A. Fenton filed a motion for bill of particulars, asking the State to identify the item of value that he was alleged to have given, promised to, or received in exchange for any sex act. The State claimed the items of value that Fenton offered to Neveah were clothes, food, marijuana, payment for an Uber ride, and payment for a shower, and that any one of those offers would be sufficient. The district court denied Fenton's motion, and the case proceeded to a jury trial on May 9.

At the close of the State's evidence, Fenton moved for judgment of acquittal, which the district court denied. The parties made their closing

arguments on May 10, and the jury returned a guilty verdict the same day. The district court later denied Fenton's motion for new trial, sentenced him to serve five years in prison, and ordered him to complete the sex offender treatment program as a term of his sentence.

We directed Fenton's appeal to the court of appeals, which determined that the district court applied the incorrect standard in ruling on Fenton's motion for new trial. It conditionally affirmed his conviction and remanded the case to the district court for consideration of Fenton's motion for new trial under the correct standard. We granted Fenton's application for further review.

**II. Analysis.**

Fenton challenges the sufficiency of the evidence to support his conviction for solicitation of commercial sexual activity under Iowa Code section 710A.2A.[1] We review this challenge for the correction of errors at law and will not disturb the jury's finding if the evidence is "sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Schwartz*, 7 N.W.3d 756, 763–64 (Iowa 2024) (quoting *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021)). Additionally, we view the evidence "in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.' " *Id.* at 764 (quoting *Jones*, 967 N.W.2d at 339).

For the jury to find Fenton guilty of solicitation of commercial sexual activity, the State had to prove that Fenton enticed, coerced, or recruited—or attempted to entice, coerce, or recruit—a person under the age of eighteen or a

---

[1]Fenton also argues the district court imposed an illegal sentence and applied the incorrect standard in ruling on his motion for new trial. The State concedes these issues, and we need not address them given our decision to reverse Fenton's conviction and remand for dismissal.

law enforcement officer representing to be a person under the age of eighteen to engage in commercial sexual activity. *See* Iowa Code § 710A.2A. Fenton specifically contests the evidence to support a finding that his actions met the definition of "commercial sexual activity." The district court instructed the jury that commercial sexual activity "means any sex act or sexually explicit performance for which anything of value is given, promised to, or received by any person and includes, but is not limited to, prostitution, participation in the production of pornography, and performance in strip clubs." *See* Iowa Code § 710A.1(1); *cf. State v. Mathis*, 971 N.W.2d 514, 518 (Iowa 2022) (explaining jury instructions become the law of the case in reviewing the sufficiency of the evidence when the defendant does not object to the relevant jury instruction).

The key phrase here is "promised to" because the record is clear there was nothing given or received in Fenton's attempt to solicit sex from Neveah. In challenging the sufficiency of the evidence, Fenton interprets this to require a quid pro quo exchange. To illustrate, he explains that his discussion with Neveah about renting a shower room "was not an offer to get a shower *in exchange for sex*; it was merely an attempt to arrange a location." Likewise, Fenton contends that his offer to arrange an Uber ride for Fenton to the Flying J was to facilitate the sex, not in exchange for sex. We agree.

In any event, Fenton did not follow through on any promise that he was going to cover the cost of the shower or Uber. On the day of their arranged meeting, Fenton messaged Neveah that he could not afford both a roundtrip Uber and the cost of the shower rental. Neveah told him that she had taken money from her mom and would purchase the shower. Nevertheless, she indicated that she did not know how to purchase a shower rental, so Fenton told her to wait

until he got there for his help. All of this occurred after they had already agreed to meet up for sex and would not have been *in exchange* for sex.

Other statements from Fenton that the State relied on at trial include his exchanges with Neveah about clothes, food, marijuana, and money. For example, when Fenton told Neveah he was bored, Neveah told him to "go make some money" because it "always feels good to have a lil $." Fenton responded, "I have some money and you have?" before initiating more sexually explicit conversation. In another conversation, Neveah suggested that she would like to smoke "weed" with Fenton "after [their] time in the shower." Fenton told Neveah that he would "have to [go get] more." These conversations are too vague to rationally infer that Fenton was promising Neveah marijuana or money in exchange for sex. Notably, Fenton did not have any food, marijuana, or girls' clothing on him when he was arrested at the Flying J.

Even what appears to be the State's strongest evidence against Fenton is too tenuous. This evidence stems from the following conversation between Fenton and Neveah after he proposed the idea of a threesome with Neveah and her fifteen-year-old friend:

> [Neveah:] What would u do 4 a threesome
>
> [Fenton:] what do i need to do lol
>
> [Neveah:] Idk. Girls like food and clothes lol
>
> [Fenton:] ok i have no prob spoiling a [little]
>
> [Fenton:] [let me know] what she says
>
> [Neveah:] Ok I will
>
> [Neveah:] U promise?
>
> [Fenton:] yeah for sure
>
> [Neveah:] Ok cool. I'll let u know a good day and if she's down

A few minutes later, Neveah told Fenton that her friend "said no" to the threesome idea, and they moved on to a different discussion about sending each other photos. This conversation occurred five days before the Flying J meetup that led to Fenton's arrest, and the pair had several conversations in the time between. It also occurred long after Fenton and Neveah had originally agreed to meet for sex.

A review of other states with the same or comparable statutes supports our conclusion. For example, in *State v. Rai*, 924 N.W.2d 410, 413 (N.D. 2019), North Dakota police posed as an eighteen-year-old woman on a website used to solicit paid sexual activity. When someone would express interest, the police would reveal that the woman was actually fourteen years old to see who would continue engaging with them. *Id.* With this information, the defendant agreed to meet the fourteen-year-old at a hotel for sex and had a clear conversation with her about his intent to pay her for a sexual encounter. *Id.* at 413, 415. After the fourteen-year-old told the defendant, "[I] don't need friends babe. . . . I need $$$$," the defendant responded, "[O]key i wan[t] to [hangout] with u [what's] the price?" Appellant's Brief at 3, *State v. Rai*, 924 N.W.2d 410 (N.D. 2019) (No. 20180244), 2018 WL 6624462 (third alteration and omission in original). The defendant agreed to pay her $100 and learned the meeting place of a room at a local hotel. Appellee's Brief at 7–8, *State v. Rai*, 924 N.W.2d 410 (N.D. 2019) (No. 20180244), 2018 WL 6624461.

Police arrested him when he arrived at the hotel with $100 cash in his possession. *Id.* at 9. The Supreme Court of North Dakota affirmed his conviction because the text messages between the defendant and the undercover officer "supported the State's argument that [the defendant] believed he was talking to a fourteen year old girl and intended to pay her for a sexual encounter." *Rai*, 924

N.W.2d at 415. Many other courts have upheld convictions for comparable charges where the defendant's messages clearly showed the defendant's plan to pay for sexual acts with a minor. *See, e.g.*, *People v. Gaciarz*, 98 N.E.3d 406, 409, 417–18 (Ill. App. Ct. 2017) (finding sufficient evidence to support defendant's conviction of "involuntary sexual servitude of a minor" where he answered an advertisement, told the advertiser that he "would like to spend 1 h[our]" with a fifteen-year-old brunette female, the advertiser confirmed it was $150 for the hour, and the defendant made specific arrangements to meet the minor at a hotel); *State v. Pemberton*, No. 81366–8–1, 2020 WL 3047310, at *1–3 (Wash. Ct. App. June 8, 2020) (affirming the defendant's conviction for "attempted commercial sexual abuse of a minor" where the defendant responded to a Craigslist advertisement purporting to be a thirteen-year-old girl looking to explore sexually, the girl indicated she would "do some condom testing" with the defendant for "a few bucks" to put minutes on her phone, the defendant agreed to help her "out with some phone time," and the defendant arrived at their planned meeting location).

These cases involved a tacit understanding that the defendant was looking to buy sexual activity from a minor who was equally looking to sell that activity. That understanding did not exist here. Although Fenton told Neveah he had "no prob[lem] spoiling" and mentioned giving her certain items when they were together, there was never a direct acknowledgment that he would provide anything of value in exchange for sexual activity. To affirm this conviction would risk criminalizing banter not uncommon in dating and flirtation.

Overall, the dispositive phrase in the statutory definition of "commercial sexual activity" is "for which." Iowa Code § 710A.1(1). The statute is only met when an individual attempts to obtain "any sex act or sexually explicit

performance *for which* anything of value is given, promised to, or received by any person and includes, but is not limited to, prostitution, participation in the production of pornography, and performance in strip clubs." *Id.* (emphasis added). Accordingly, we agree with Fenton that Iowa Code section 710A.1(1) requires an express or implied quid pro quo. This case involves neither.

As reprehensible as Fenton's behavior was in grooming who he thought was a fifteen-year-old girl to have sex with him, the evidence presented at trial—even viewed in the light most favorable to the State—was insufficient to convince a rational jury of Fenton's guilt beyond a reasonable doubt. *See Schwartz*, 7 N.W.3d at 763–64 (explaining the sufficiency-of-the-evidence standard). We must remand for dismissal of Fenton's criminal charge because the Double Jeopardy Clause prevents the State from retrying the case. *See State v. Chapman*, 944 N.W.2d 864, 875 (Iowa 2020) ("If the State fails to present sufficient evidence to convict a defendant at trial, the Double Jeopardy Clause prevents the State from trying to prove its case in a second trial.").

**III. Conclusion.**

For these reasons, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for an order dismissing the case.

**Decision of Court of Appeals Vacated; District Court Judgment Reversed and Case Remanded for Dismissal.**

All justices concur except May, J., who takes no part.